338 S.E.2d 171

**Ethelyn Lou RALEY**

v.

**Ross J. RALEY.**

No. 15982.

Supreme Court of Appeals of
West Virginia.

Dec. 11, 1985.

---

Robyn Ruttenberg, Wheeling, for appellant.

Paul T. Camilletti, Camilletti & Sacco, Wheeling, for appellee.

McGRAW, Justice:

This appeal by Ethelyn Lou Raley from a final divorce decree in the Circuit Court of Marshall County raises the issue of whether distributions from an employee investment or thrift account are income, to be considered in determining the amount of alimony awarded, or, are marital property, subject to equitable distribution. Following a brief discussion of the circumstances presented in this case, we will address this issue.

Ethelyn and Ross Raley were married on September 1, 1948. Their union produced two offspring, both emancipated at the time of the appellant's petition for divorce

in January 1978. Prior to a final hearing on the petition, the marital home was sold by mutual consent, and the net proceeds of approximately $48,000.00 were divided equally. Further, by mutual agreement, their personal property was divided equally, with each receiving a car, household furnishings, and other items.

In her complaint, the appellant requested, *inter alia*, that she "be awarded one-half (½) of the Continental Oil Company Stock owned by the parties." This stock had been purchased through a voluntary, contributory employee investment or thrift account, titled solely in her husband's name, in which he had participated. Each contribution made to this account was matched dollar for dollar by his employer.

On December 1, 1979, the appellee retired, and a ten year distribution schedule was chosen, with monthly payments of $910.94, or until the value of the account was depleted. The administrator of this account testified that, when this option was selected, the appellee lost all control of the stock. If a surplus in his account exists, however, at the end of this ten year period, he will receive a lump sum distribution of that amount.

■■■ In the trial court's divorce decree of February 3, 1983, distributions from the appellee's investment or thrift account were classified as income taken into consideration in its monthly alimony award of $200.00 to the appellant. On May 16, 1983, the appellant filed her petition for appeal from this decree. On May 25, 1983, this Court rendered its decision in *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983), adopting the doctrine of equitable distribution of marital property upon divorce in this jurisdiction. In Syllabus Point 13 of *LaRue*, this Court held that, "Because equitable distribution based on economic contributions does not involve any substantial departure from our prior law which is contained in *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981), and related cases, it is available in pending cases where the issue is specifically asserted." [1] The appellant's claim to an equitable distribution of her husband's investment or thrift account was based on her economic contributions to the household through her twelve years of employment during the marriage as a licensed practical nurse, and her appeal, asserting a right to a portion of that account, was pending at the time of our decision in *LaRue*.

With respect to what constitutes "marital property" subject to equitable distribution, it has been noted that, "As a general rule, all property acquired during the marriage is marital property, while property owned by the parties prior to marriage, or acquired during the marriage by gift or inheritance is separate property, as is property acquired in exchange for any separate property." [2]  24 Am.Jur.2d *Divorce and*

---

**1.** In Syllabus Point 14 of *LaRue*, this Court held that:

Equitable distribution based on homemaker services should be applied prospectively, that is, only to those cases filed after the date of this opinion. Since we have applied the homemaker principles to the present case, we will extend those principles to those cases presently on appeal to this Court where an equitable distribution claim for homemaker services has actually been presented in the lower court.

Although fairly substantial testimony was offered below with respect to the appellant's economic contributions to the marriage, no testimony was presented with respect to the quantity or quality of homemaking services rendered. It is therefore clear that the appellant's claim to a portion of her husband's investment or thrift account was based solely upon those economic contributions, and not upon homemaker services, thereby foreclosing her right to seek distribution for those services. We further note the unavailability to the appellant of the equitable distribution amendments to our divorce statute passed in 1984, *see* 1984 W.Va. Acts ch. 60, which provide that, "such amendments ... shall not, in any case, be applicable to actions ... in which, prior to the effective date [June 8, 1984] of the act of the legislature enacting such amendments, (1) there has been a final decree entered ... or (2) the taking of evidence has been completed and the case submitted for decision." West Virginia Code § 48–2–36 (Supp. 1985). The final decree in the instant case was entered on February 3, 1983, thereby foreclosing the appellant's right to seek an equitable distribution under the 1984 amendments.

**2.** This definition has been codified at West Virginia Code §§ 48–2–1(c) and (d) (Supp.1985), which provide that:

(c) "Marital property" means:

*Separation* § 878, at 860 (1983) [Footnotes omitted]; *see also LaRue v. LaRue,* 172 W.Va. at 167, 304 S.E.2d at 320–21. Without question, contributions made to the appellee's investment or thrift account was formulation of "marital property," in the same manner as contributions to a savings account, which was divided equally by the court, were acquisitions of "marital property." *See In re Marriage of Evans,* 85 Ill.2d 523, 530–34, 55 Ill.Dec. 529, 533–34, 426 N.E.2d 854, 858–59 (1981) (vested shares of stock purchased pursuant to husband's employee investment program were marital property for purposes of equitable distribution). *Geil v. Geil,* 647 S.W.2d 161, 162 (Mo.Ct.App.1983) (husband's accrued vacation pay and savings and investment plan were marital property for purposes of equitable distribution). The character of the account did not change merely because the appellee chose to forego immediate access to the stock in exchange for periodic payments from the value of the account. Certainly, lack of immediate access to the stock made distribution more difficult, but alternatives such as awarding a lump sum or periodic payments based upon the present value of the account or directing that a portion of monthly distributions from the account which represented the appellant's economic contribution to the marriage be paid directly to the appellant were available.

In Syllabus Point 2 of *LaRue, supra,* this Court held that:

The doctrine of equitable distribution permits a spouse, who has made a material economic contribution toward the acquisition of property which is titled in the name of or under the control of the other spouse, to claim an equitable interest in such property in a proceeding seeking a divorce. Because these are economic contributions, the right to claim such equitable relief is not barred because the party seeking them may be found at fault in the divorce action itself.

As with the savings account which was distributed equally between the parties, the trial court in the instant proceeding should have distributed the appellee's investment or thrift account, which was merely another type of savings.

Accordingly, for the foregoing reasons, the final decree of the Circuit Court of Marshall County is reversed, and this case remanded for an equitable distribution of the present value of the appellee's investment or thrift account at the time of the divorce decree less the amount of alimony paid subsequent to the decree.[3]

Reversed and remanded.

(1) All property and earnings acquired by either spouse during a marriage including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this State, except that marital property shall not include separate property as defined in subsection (d) of this section; and (2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage. . . .

(d) "Separate property" means:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a person during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; and

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) or this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

**3.** In Syllabus Point 3 of *LaRue,* this Court held that, "In determining an appropriate amount for equitable distribution where there have been economic contributions made (other than homemaker services), it is necessary to consider the respective economic contributions made by both parties during the marriage as weighed against the net assets at the time of the divorce...." Therefore, on remand, the trial court must determine the present value of the appellee's investment or thrift account at the time of the final decree, and award to the appellant an amount which represented the proportion of her economic contribution to the marriage less the amount of alimony paid by the appellee subsequent to the final decree which was based on the court's misclassification of the distributions from the investment or thrift account as income. If the court finds that it would be inequitable to require lump sum payment of this amount, an award of periodic payments or direction that a portion of future monthly distributions be paid directly to the appellant in satisfaction of this equitable division would be appropriate.