437 S.E.2d 770

**Ethelyn Lou RALEY, Plaintiff Below, Appellant,**

v.

**Ross J. RALEY, Defendant Below, Appellee.**

No. 21453.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 1993.

Decided Nov. 23, 1993.

Robyn Ruttenberg, Wheeling, for appellant.

Paul C. Camilletti, Camilletti, Sacco & Pizzuti, Wheeling, for appellee.

*ford v. Hatcher,* 804 F.Supp. 834 (S.D.W.Va. 1992).

PER CURIAM:

This action is before this Court upon an appeal from the March 19 and March 26, 1992, orders of the Circuit Court of Marshall County, West Virginia. The circuit court awarded the appellant, Ethelyn Lou Raley, an additional four percent distribution from the appellee's, Ross J. Raley, investment account, which brings the appellant's total share of the investment account to eighteen percent. On appeal, the appellant asks that this Court reverse the orders of the circuit court and award the appellant fifty percent of the appellee's investment account value as of March 17, 1983, plus interest at the rate the investment has earned since that date. For the reasons stated below, the judgment of the circuit court is reversed.

The parties were married on September 1, 1948, and they separated in January of 1978. Two children were born of the marriage, who are now emancipated. The appellant sought a divorce from the appellee, and on March 17, 1983, the parties were granted a divorce. The appellant was awarded one-half of the joint savings account, however, she was denied any interest in the United States Savings Bonds or the investment account, Continental Oil Company Stock.

The investment account in question is a voluntary, contributory plan offered by Consolidation Coal Company to its salaried employees. The contributions were made through payroll deduction, and Consolidation Coal Company matched the appellee's contributions on a percentage basis. The method of payment chosen by the appellee was known as the fixed payment option. This simply means at the commencement of the appellee's retirement, over a ten-year period, the appellee would receive $910 per month, but he is precluded from making any further contributions to the plan once he retires. At the expiration of the ten-year period, the appellee would receive the remainder of the money. Each year, the appellee may make a maximum of two lump-sum withdrawals per year, however, he also has the right to withdraw all of the money from the plan at any time. It should be noted that all contributions to the plan, titled in the appellee's name, were made during the marriage.

This is the second sequel to this Court's original opinion, *Raley v. Raley,* 175 W.Va. 694, 338 S.E.2d 171 (1985) (hereinafter "*Raley 1*"). The progression of events leading up to this most recent *Raley* decision is as follows.

The first petition for appeal, which ultimately led to *Raley* 1, was filed on May 16, 1983. On May 25, 1983, this Court rendered its decision in the landmark case of *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983) in which this Court adopted the doctrine of equitable distribution of marital property upon divorce. In *Raley* 1, we recognized that the principles enunciated in *LaRue* were applicable to the facts of *Raley* 1. However, we also recognized, in note 1 of *Raley* 1, the unavailability of the equitable distribution amendments to our divorce statute, *W.Va. Code,* 48–2–32 [1984], as the effective date of such amendments was June 8, 1984.

Beyond discussing the applicable laws to *Raley* 1, we pointed out that the contributions made to the investment account were clearly marital property pursuant to *W.Va.Code,* 48–2–1 [1985]. Accordingly, in *Raley* 1, we cited and relied upon syllabus point 2 of *LaRue,* which held:

The doctrine of equitable distribution permits a spouse, who has made a material economic contribution toward the acquisition of property which is titled in the name of or under the control of the other spouse, to claim an equitable interest in such property in a proceeding seeking a divorce. Because these are economic contributions, the right to claim such equitable relief is not barred because the party seeking them may be found at fault in the divorce action itself.

Thus, based upon this rule of law, we specifically held in *Raley* 1: "As with the savings account which was distributed equally between the parties, the trial court in the instant proceeding should have distributed the appellee's investment or thrift account, which was merely another type of savings." 175 W.Va. at 697, 338 S.E.2d at 174–75. Therefore, the case was remanded for an equitable distribution of the present value of the investment account at the time of the

divorce. Following that opinion, it was stipulated by the parties that the value of the investment account on the date of divorce equaled $208,526.62. The trial court subsequently awarded the appellant fourteen percent of the investment account based upon her economic contribution to the marriage.

Then came *Raley v. Raley*, 181 W.Va. 254, 382 S.E.2d 91 (1989) (hereinafter "*Raley* 2"), the first sequel to *Raley* 1. In *Raley* 2, we once again began our discussion by pointing out a recent decision by this Court and its applicability to *Raley* 2, that case being *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987). In *Cross*, we stated that we were purposefully not going to formulate any sort of bright-line rule to follow in pension plan distribution cases because each case is different with a different set of problems. But, we pointed out that other jurisdictions have established some broad guidelines to be used by the courts in the division of pension plans.

In *Raley* 2, we quoted and relied upon one of the pertinent guidelines for distribution introduced in *Cross:* " 'The distribution should generally be based on the contributions made during the marriage.' " 181 W.Va. at 256, 382 S.E.2d at 93. Accordingly, we acknowledged the evolution in distribution principles as it once was in *Raley* 1, a focus on economic contributions, and now the trend toward focusing on the more general contributions one makes in a marriage, per *Cross*. Therefore, in *Raley* 2, we concluded by directing the circuit court to take further evidence in order to allow for distribution of the investment account in accordance with the principles set forth in *Cross*. Following that opinion, the trial court awarded the appellant an additional four percent of the investment account for a total of eighteen percent.

We are now in the second sequel and the sole issue before us is whether the appellant is entitled to fifty percent of the investment account. We believe she is.

In *Raley* 1, in 1985, we specifically called for the equitable distribution of the investment account. We found that the investment account was analogous to the savings account, and the savings account had been distributed equally among the parties. Thus,

we concluded that since the investment account was simply another type of savings account the trial court should have distributed the investment account as well, inferring an equal distribution of the account.

However, upon remand, the trial court failed to equally distribute the investment account. In *Raley* 2, we took into consideration the evolution and progression of the law relating to the distribution of pension plans in order to facilitate the distribution of the investment account in question. Our goal was to ensure that the trial court arrived at a fair and equitable distribution of the investment account.

The family law master, following the second remand by this Court, heard and took additional evidence regarding the parties' contribution to the marriage for the purpose of distribution. Expert testimony established the fact that during the marriage the average monetary value of the appellant's homemaker services totalled $216,572.00, and her employment income for the eleven years when she was employed outside the home totalled $50,925.34. The Social Security Administration's records indicate that the appellee's covered earnings during the marriage totalled $247,572.36. When formulating her conclusion, the family law master looked to *LaRue* and the progression of the case law establishing the presumption of equal division of marital assets as available to actions arising under *LaRue;* and, based upon this premise, she found that the appellant had made substantial economic contributions to the acquisition of marital assets thus entitling her to an equal share of the investment account or fifty percent.

The trial court found that the family law master erred in considering the homemaker services of the wife when formulating the distribution. We disagree. The family law master's analysis utilized the guidelines we discussed in *Cross* and the family law master's conclusion mirrored what this Court has been attempting to achieve. The trial court failed to follow this Court's proposed instructions in *Raley* 2, which in essence modified *Raley* 1:

> Because the Court in *Cross v. Cross* indicated that general contributions, rather than economic contributions, were to be

the basis for a distribution, it deviated from the principles of distribution set forth in *Raley v. Raley, supra* [*Raley* 1]. The deviation was based upon an extensive consideration of the equities involved in the distribution of investment accounts as well as upon legal principles as they evolved in other jurisdictions.

181 W.Va. at 256, 382 S.E.2d at 93.

It is obvious that the appellant made a significant monetary contribution to the marriage as well as many other contributions, i.e., homemaker skills, in which she did not receive any sort of financial compensation. Moreover, it is time to put an end to the continuing nature of this case. This sequel may serve as the conclusion to the *Raley* saga. Therefore, after considering the principles enunciated in *Raley* 1, specifically, syllabus point 2 of *LaRue*, in conjunction with the progression of our law as explained and implemented in *Raley* 2, we are of the opinion that the appellant is entitled to fifty percent of the present value of the investment account, plus interest at the rate the investment has earned since March 17, 1983, the date of the final divorce decree.

Based upon the foregoing principles, the order of the Circuit Court of Marshall County is reversed and this case is remanded for an equal distribution of the investment account between the parties.

Reversed and remanded.