OPINION OF THE COURT
Morton I. Willen, J.
Plaintiff and defendant were married on December 30, 1978 *159 in Hamilton County, Ohio. They have one child, Kurt A. Freyer, born on August 30, 1982 in Huntington, New York. Plaintiff is approximately 32 years of age while defendant is approximately 33. Plaintiff is employed as a medical doctor at the State University Hospital at Stony Brook, New York, and at the Northport Veterans’ Administration Hospital in North-port, New York. Defendant is a research scientist employed at Sloane-Kettering Memorial Hospital in New York City. Plaintiff and defendant met and married in 1978 when plaintiff was a research assistant and defendant was a graduate student of the University of Cincinnati. Upon completion of defendant’s work thereat, plaintiff and defendant relocated to Columbia, defendant to further his career and plaintiff to attend medical school. They spent two academic years, 1979/1980 and 1981/ 1982, in Missouri. Defendant finished his program there and obtained his Ph D degree. Thereafter, he applied for and was accepted to a postdoctoral program in New York. Plaintiff transferred to State University at Stony Brook Medical School and graduated with her medical degree in 1983. Thereafter, she did her residency requirements and obtained her license to practice medicine in New York in July 1986. Coincidently, the divorce action was commenced on January 30, 1986, and the parties were divorced in June 1986. There remains for determination certain issues of property distribution.
At the outset, the court is confronted with certain novel questions:
(1) Is a party’s academic degree acquired during a marriage marital property subject to equitable distribution?
(2) Where a professional license is actually acquired after the commencement of a matrimonial action, i.e., it has "not vested” to the recipient thereof, may it still be classified as marital property?
(3) In distributing professional licenses and academic degrees, do income tax considerations play a part in arriving at their valuation?
(4) To what extent do a husband’s indirect contributions to a marriage such as homemaker services come into consideration?
Question No. 1 must be answered in the affirmative. Since the landmark decision in McGowan v McGowan (136 Misc 2d 225 [Sup Ct, Suffolk County 1987]; see, Samuelson, The Ultimate O’Brien, 19 [No. 3] Fam L Rev 1 [NY St B Assn, Sept. 1987]), it is clear that academic degrees constitute marital property.
*160 Question No. 2 must also be answered in the affirmative. Plaintiff claimed that since she was licensed by the State of New York to practice medicine in July of 1986 and this event occurred some six months after the commencement of the action and one month after the parties were divorced that her license is her separate property and her husband has no right to share in the value thereof. The court disagrees. Here, the court finds that during the marriage, both parties poured in significant contributions both financially and indirectly towards each other’s happiness and betterment. Plaintiff finished her academic requirements in 1983, and very nearly finished her residency both at the time of the commencement of the action and at the time of the decree of divorce being signed. For purposes of dividing pensions in equitable distribution proceedings, the law in New York is clear that a non-vested pension is an asset subject to equitable distribution on divorce (Damiano v Damiano, 94 AD2d 132 [2d Dept 1983]; Lentz v Lentz, 103 AD2d 822 [2d Dept 1984]; Cohen v Cohen, 104 AD2d 841 [2d Dept 1984]; Cavaretta v Cavaretta, 127 AD2d 1002 [4th Dept 1987]; but see, Majauskas v Majauskas, 61 NY2d 481 [1984; dictum].) So it should be also with professional licenses and academic degrees. Otherwise, with the simple stroke of serving a summons immediately prior to graduation day, a spouse contemplating divorce could prevent a spouse who assisted in his or her spouse’s attaining such degree or license from receiving that which he or she is entitled to. Certainly in this action, both parties assisted the other spouse greatly in their academic endeavors.
Question No. 3 must also be answered in the affirmative. Domestic Relation Law § 236 (B) (5) (d) (10) provides that in dividing the parties’ marital property, the court must consider the tax consequences to each party. Parenthetically, the court notes that Domestic Relations Law § 236 (B) (5) (d) (8) provides that the court should also consider the probable future financial circumstances of each party. With respect to a party’s pension, the courts in New York have come to the realization that there may be serious tax consequences to either or both parties when a court divides pension and/or retirement benefits (Tereszkiewicz v Tereszkiewicz, 128 AD2d 605 [2d Dept 1987]; Povosky v Povosky, 124 AD2d 1068 [4th Dept 1986]; Francis v Francis, 133 AD2d 335 [2d Dept 1987]; Schanback v Schanback, 130 AD2d 332 [2d Dept 1987]; but see, Karp v Karp, NYLJ, June 16, 1987, at 12, col 2 [Sup Ct, NY County, Stecher, J.]).
*161 Nationally, there appears to be three rules regarding tax affecting of assets in equitable distribution cases:
(1) Majority Rule: If a sale is required by judgment or if is required in order to meet the term of the judgment, tax impacting is proper (In re Marriage of Fonstein, 17 Cal 3d 738, 552 P2d 1169 [1976]; In re Ondrasek v Ondrasek, 126 Wis 2d 469, 377 NW2d 190 [1985]; In re Salstrom v Salstrom, 404 NW2d 848 [Minn 1987]; In re Marriage of Olinger, 75 Ore App 351, 707 P2d 64 [1985]; Wallahan v Wallahan, 284 NW2d 21 [SD 1979]; In re Marriage of Emken, 86 Ill 2d 164, 427 NE2d 125 [1981]; In re Marriage of Bayer, 687 P2d 537 [Colo App 1984] ; In re Biddulph v Biddulph, 147 Ariz 571, 711 P2d 1244 [1985]). Otherwise, it is not proper;
(2) Minority Rule: Tax affecting is required of all equitable distribution property (Donovan v Donovan, 494 A2d 1260 [Del 1985] );
(3) Wisconsin Rule: "Reasonable speculation” and "fairness” is inherent in assigning values to future interests (In re Liddle v Liddle, 140 Wis 2d 132, 410 NW2d 196 [1987]).
Certainly, if the courts are going to tax impact with something as speculative as future pension and/or retirement benefits, they must also tax impact with academic degrees and licenses. The court also notes that it would be grossly unfair to divide such assets on their gross value, leaving one of the parties to bear the burden of all future tax liability (address by Stephen Gassman, Esq., Assn of Bar of City of NY [Dec. 3, 1987]). Here, the court notes that both experts considered tax consequences in arriving at values for the degrees and licenses in question.
As to question No. 4, the court holds that both parties’ homemaker contributions must be considered in distributing marital property. A husband’s homemaker services are oftentimes not put into evidence in equitable distribution cases, but they should be. They are very important to a court’s decision, and they were in this case. The practicing matrimonial bar is alerted accordingly.
MARITAL RESIDENCE
It is unquestioned that throughout the marriage, plaintiff wife’s income exceeded defendant husband’s by approximately $32,500. The court also finds, however, that there was a classic role reversal of the parties in that defendant husband did much more than an equal share of the homemaker and child- *162 rearing duties of this family. In fact, economist testimony demonstrated that the value of defendant husband’s homemaker services monetarily exceeded plaintiff wife’s by approximately $33,000. Noting that contributions of one spouse as homemaker are presumed equal in value to the other spouse’s contributions as an income earner (Conner v Conner, 97 AD2d 88 [2d Dept 1983]), the court holds that the sum of the parties’ contributions, both financial and indirect, are exactly equal, and that they should share equally in the marital residence, with one caveat, i.e., plaintiff wife shall be reimbursed for her contribution of separate property to the acquisition of the marital residence in the sum of $20,000 (Coffey v Coffey, 119 AD2d 620 [2d Dept 1986]; see also, Cunningham v Cunningham, 105 AD2d 997 [3d Dept 1984]; Parsons v Parsons, 101 AD2d 1017 [4th Dept 1984], on remand 115 AD2d 289 [4th Dept 1985]). With that exception, the marital residence shall be sold on the child’s attaining age 18 or upon plaintiff wife’s remarriage, whichever occurs first, and the net proceeds of sale after payment of closing costs, taxes and child support arrears, if any, shall be distributed equally to the parties. Until then, plaintiff shall have exclusive occupancy.
PARTIES’ LICENSES AND DEGREES
Plaintiff’s expert, Professor Conrad Berenson, calculated defendant’s earnings discounted for such factors as taxes, work-life expectancy, future increases in wages and future increases in costs or earning capacity of money (discounting to present value) that defendant would have earned during his expected period of work as a Ph D and subtracted from that amount anticipated earnings had he been possessed of only a Bachelor’s degree. The difference, the enhanced earning capacity (O’Brien v O’Brien, 66 NY2d 576 [1985]; McGowan v McGowan, supra), he submitted was $302,000. Defendant’s expert, Dr. Anna B. Dutka, testified that based, upon her best professional opinion, defendant’s Ph D was worth $320,000. While the court was most impressed with both these highly capable expert economists, the court gives more credence to plaintiff’s expert inasmuch as he valued the degree as of the date of trial and gave defendant a work-life expectancy based upon appropriate work-life tables (see, 1 NY PJI2d Appendix B; Eden, Forensic Economics — General Overview: Death of Person in Labor Force, 13 Am Jur Proof of Facts 2d, at 45) and not just age 65.
With regard to the value of plaintiff wife’s medical license, *163 Dr. Dutka’s testimony became very confusing and contradictory at times, but giving credence to the testimony that women now, apparently, have longer work lives than men and giving recognition to the fact that with a Bachelor’s degree plaintiff was relegated to services as a lab technician, the court concludes that the value of plaintiff’s license is $500,000, a sum which is markedly close to that figure reached in O’Brien v O’Brien (supra).
With regard to distribution, the court takes cognizance of the fact that, while there were contributions by each party to the attainment of each other’s enhanced earning capacity, it was the efforts and abilities of each party that mainly led to the attainment of that party’s degree or license. (See, Arvantides v Arvantides, 64 NY2d 1033 [1985]; McKee v McKee, NYLJ, Aug. 28, 1984, at 11, col 1 [Sup Ct, Nassau County, Postel, J.].) Accordingly, each party will be awarded 40% of each other’s degree or license. Accordingly, defendant is awarded a distributive award of $79,200 payable either in a lump sum or at the rate of $7,920 per year for a period of 10 years with interest at the legal rate.
[Portions of opinion omitted for purposes of publication.]