370 S.E.2d 473

**Bruce Allyn HOAK**

v.

**Rebecca Leah HOAK.**

**No. 17961.**

Supreme Court of Appeals of
West Virginia.

May 19, 1988.

Robin Jean Davis, Hostler and Segal, Charleston, for appellant.

R. Joseph Zak, Charleston, for appellee.

BROTHERTON, Justice:

This appeal from a divorce decree presents an issue of first impression in the courts of West Virginia: Is a professional degree earned during marriage "marital property" subject to equitable distribution? The circuit court in this case answered "no," and Rebecca Hoak, the working spouse, appeals. Based on our review of the record, the briefs, and the law of the many jurisdictions that have considered this issue, we conclude that a professional degree is not marital property. The Court adopts instead the concept of reimbursement alimony as a means of compensating the working spouse in this kind of "professional degree/divorce decree" case. We reverse the judgment of the lower court and remand the case for further proceedings, for reasons set out more fully below.

The appellant, Rebecca Hoak, and the appellee, Bruce Hoak, were married August 16, 1980. At that time, the appellee had completed his first year of medical school. The appellant had received a Bachelor of Science degree in horticulture, and was working for a landscape company. She changed jobs a year later, leaving her field of expertise in order to make more money. She intended to return to school for a degree in education or accounting after her husband completed his training. The appellee secured some odd jobs during medical school, but does not dispute that his wife provided the majority of the financial support and homemaker services for the household during the years 1980–1982.

The appellee graduated from medical school in the spring of 1983, and began a five-year surgical residency in Charleston, West Virginia, in July of that year. Thereafter, the appellee provided primary support for the couple, and the appellant worked only sporadically.

The parties separated in September, 1984, and on October 26, 1984, Bruce Hoak filed an action for divorce in the Circuit Court of Kanawha County. On December 14, 1984, the circuit court issued a temporary relief order requiring the appellee to pay $500 per month alimony to his wife and $400 per month child support for the couple's infant daughter. Depositions were taken in August and October, 1985, before Special Commissioner Alfred B. McCuskey. On November 15, 1985, the circuit court entered a second temporary relief order reducing monthly child support to $250. On March 12, 1986, the special commissioner filed his report, recommending that the appellee pay his wife $250 per month child support, and $150 per month rehabilitative alimony for two years or until the appellant was gainfully employed.

On August 29, 1986, the circuit court entered a final order dissolving the marriage. The court awarded the appellant $250 per month child support, plus the child's medical and dental expenses, and $500 per month rehabilitative alimony for two years. The court also ordered the

appellee to pay attorney's fees in the amount of $1,875.[1]

Rebecca Hoak petitioned this Court for an appeal from the circuit court's order, alleging that the circuit court had erred by failing to hold that a license to practice medicine earned during marriage is marital property subject to equitable distribution under W.Va. Code §§ 48–2–1(e)(1) (1986) and 48–2–32 (1986). She also assigned as error the court's failure to award permanent alimony, and disputed its determination on the issue of attorney's fees, expert fees, and court costs. We granted the appeal and, after briefs and argument, address herein the questions presented.

## I.

Code § 48–2–32 governs the disposition of marital property upon divorce. It provides that such property shall be divided equally, unless the parties agree otherwise in a separation agreement, or unless the court alters the allocation based on its consideration of certain factors enumerated in the statute. Section 48–2–1(e) defines "marital property" as:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, .·. and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

The appellant contends that her husband's medical degree is marital property subject to equitable distribution, because it falls within the broad statutory definition quoted above. The appellant argues that her ex-husband's medical degree is a valuable right or interest acquired during the marriage, and that she should share in the increased earning capacity achieved with the help of her financial and other contributions.

At this writing, the highest courts of almost half the states have considered this question, and only one, New York, has concluded that a professional degree is property. *See O'Brien v. O'Brien*, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985).[2] The rationale most often quoted for the majority view is that of the Supreme Court of Colorado:

An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined

---

1. The couple had accumulated little in the way of marital property. The court awarded an automobile to each, and the household items to the wife, and divided certain credit card indebtedness between them, presumably according to source. Neither party has objected to this division on appeal.

2. *See also Woodworth v. Woodworth*, 126 Mich. App. 258, 259–60, 337 N.W.2d 332, 334 (1983) (intermediate appellate court holding law de-

gree to be marital property); *but see Olah v. Olah*, 135 Mich.App. 404, 410, 354 N.W.2d 359, 361 (1984) (medical degree is not property). *Cf. Haugan v. Haugan*, 117 Wis.2d 200, 343 N.W.2d 796, 802 (1984) (trial court may award just compensation to supporting spouse via maintenance, property division, or both). For a list of cases holding that a professional degree is *not* marital property, see *Archer v. Archer*, 303 Md. 347, 493 A.2d 1074, 1077 n. 1 (1985).

with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term. *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75, 77 (1978). Other courts have added that a professional degree or license is too speculative to value, that characterizing spousal contributions as an investment in each other as human assets demeans the concept of marriage, that future earning capacity is a mere expectancy, and that a professional degree is personal to the holder and cannot, therefore, be apportioned. *See, e.g., Archer v. Archer*, 303 Md. 347, 493 A.2d 1074, 1080 (1985); *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 260 (S.D. 1984); *Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527, 532 (1982).

Notwithstanding the overwhelming number of jurisdictions holding that a professional degree is not property, Rebecca Hoak urges us to adopt the minority view advanced most notably by the New York Court of Appeals, originally in the case of *O'Brien v. O'Brien*, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985). In *O'Brien*, husband and wife were married when both held bachelor's degrees and were teaching at the same private school in New York State. 489 N.E.2d at 713, 498 N.Y.S.2d at 744. The wife gave up her postgraduate training in order to support her husband through medical school, and moved with him to Mexico, where he attended medical school in Guadalajara. The husband filed for divorce two months after obtaining his medical degree. *Id.* 489 N.E.2d at 714, 498 N.Y.S.2d at 745. The court of appeals concluded that "marital property encompasses a license to practice medicine to the extent that the license is acquired during marriage." *Id.* 489 N.E.2d

at 715, 498 N.Y.S.2d at 746. The court noted that "marital property" is a statutory creature, which cannot be expected to fall within traditional property concepts. *Id.* It relied specifically on references in New York's equitable distribution statute to equitable claims or contributions "to the career or career potential" of the other party, and to difficulties in evaluating an interest in a "profession." *Id.* 489 N.E.2d at 715–16, 498 N.Y.S.2d at 746–47. The court concluded that "an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and non-financial contributions made by caring for the home and family." *Id.* 489 N.E.2d at 716, 498 N.Y.S.2d at 747. The court went on to say that the working spouse is entitled to an equitable portion of the present value of the professional spouse's enhanced earning capacity represented by the degree. *Id.* at 489 N.E.2d at 718, 498 N.Y.S.2d at 749.[3]

We have in prior cases construed our statutory definition broadly, concluding that "marital property" includes stock acquired by one party through a voluntary employee investment plan, *Raley v. Raley*, 175 W.Va. 694, 338 S.E.2d 171 (1985), and nondisability retirement or pension benefits, *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987); *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987). These assets differ from the professional degree in issue in this case, however, because they have been earned during the marriage and have a definite, ascertainable value, even if that value cannot be realized until certain conditions are satisfied.

In contrast, the value of a professional degree is the value of the enhanced earning capacity of the degree-holder. Not only is that value speculative,[4] but also it repre-

---

**3.** For cases following *O'Brien*, see *McGowan v. McGowan*, 136 Misc.2d 225, 518 N.Y.S.2d 346 (N.Y.Sup.Ct.1987); *Freyer v. Freyer*, 138 Misc.2d 158, 524 N.Y.S.2d 147 (N.Y.Sup.Ct.1987); *Matsuo v. Matsuo*, 124 A.D.2d 864, 508 N.Y.S.2d 630 (N.Y.App.Div.1986); *Cronin v. Cronin*, 131 Misc.2d 879, 502 N.Y.S.2d 368 (N.Y.Sup.Ct. 1986).

**4.** The writer cannot refrain from making a few observations on the difficulty of setting and apportioning the value of a professional degree. There is the obvious problem of guessing annual income correctly without enslaving the degree-holder to a lifestyle that he or she would not have chosen absent an obligation to pay half its value to a dependent spouse. Beyond that,

sents money or assets earned *after* dissolution of the marriage. As such, it falls outside our statutory definition of marital property as "all property and earnings acquired by either spouse *during a marriage.*" W.Va. Code § 48–2–1(e)(1) (emphasis added). *Accord, Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982).

On the whole, a degree of any kind results primarily from the efforts of the student who earns it. Financial and emotional support are important, as are homemaker services, but they bear no logical relation to the value of the resulting degree. We therefore hold, in accordance with the majority view, that a professional degree or license earned during marriage is not marital property subject to equitable distribution.

## II.

Although we decline to follow New York in its holding on marital property, we agree that to allow a student spouse to leave a marriage with all the benefits of additional education and a professional license without compensating the spouse who bore many of the burdens incident to procuring the degree would be unfair. *See O'Brien,* 489 N.E.2d at 715–18, 498 N.Y.S.2d at 746–49. The supporting spouse in this case made financial contributions to her husband's education with the expectation that his degree would mean a higher standard of living for them both. She made personal financial sacrifices and consented to a lower standard of living than she would have enjoyed had her husband been employed. She postponed her own career plans and presumably overlooked many current needs for the prospect of future material benefits. The appellant's sacrifices would have been rewarded had the marriage endured. The divorce has left Rebecca Hoak at a substantial disadvantage when compared with her ex-husband.

Many courts have resolved this inequity by awarding "reimbursement alimony" to the working spouse. As the name indicates, reimbursement alimony is designed to repay or reimburse the supporting spouse for his or her financial contributions to the professional education of the student spouse. Unlike an award based on the value of a professional degree, reimbursement alimony is based on the actual amount of contributions, and does not require a judge to guess about future earnings, inflation, the relative values of the spouses' contributions, etc. This concept was introduced by the Supreme Court of New Jersey in *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982). There, the court said:

> To provide a fair and effective means of compensating a supporting spouse who has suffered a loss or reduction of support, or has incurred a lower standard of living, or has been deprived of a better standard of living in the future, the Court now introduces the concept of reimbursement alimony into divorce proceedings. The concept properly accords with the Court's belief that regardless of the appropriateness of permanent alimony or the presence or absence of marital property to be equitably distributed,

should there be an offset for the discounted value of the homemaker and childbearing services that the professional spouse will never enjoy due to the divorce? Further, if we place a value on homemaker services in arriving at a fair ratio for distributing the value of the degree, should we also "pay" the student for his or her contributions in the way of long hours in the lab and the library? And, to the same point, how much of a medical degree is attributable to the actual years spent in medical school, as opposed to undergraduate courses in biology and chemistry, or other life experiences that contribute to making a good doctor?

Although, as appellant points out, courts often must place a value on human life and estimate the present value of future earning capacity in wrongful death or serious injury cases, such cases involve a third-party payor (usually an insurance company), and require speculation because the actual career will never take place. Here, even the best efforts of a trial judge would be disproved by actual events. A more accurate apportionment would result from awarding a percentage of the professional's actual earnings. Such methodology, however, runs afoul of the statute's reference to property "acquired during a marriage." W.Va. Code § 48–2–1(e)(1). The proper place for consideration of earning capacity is in an award of permanent alimony. *See* W.Va. Code § 48–2–16 (1986).

there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. Such reimbursement alimony should cover *all* financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license.

453 A.2d at 534.

We note that reimbursement between former spouses as a general rule is neither desirable nor practical. Marriage is not a business arrangement, and this Court would be loathe to promote any more tallying of respective debits and credits than already occurs in the average household. As pointed out in *Mahoney*, however,

> every joint undertaking has its bounds of fairness. Where a partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.

*Id.* 453 A.2d at 533.

We therefore conclude that the trial judge in a divorce proceeding may in an appropriate case award reimbursement alimony to a working spouse who contributed financially to the professional education of a student spouse, where the contribution was made with the expectation of achieving a higher standard of living for the family unit, and the couple did not realize that expectation due to divorce.

Our equitable distribution statute provides specifically for compensation of the supporting spouse through unequal property division. *See* W.Va.Code § 48–2–32(c)(3).[5] Where the marriage is of insufficient duration to allow the parties to accumulate substantial marital assets, however, this provision is inadequate to protect the supporting spouse. Our authority for awarding reimbursement alimony comes rather from our alimony statute. West Virginia Code § 48–2–16(b)(4) & (16) allows consideration of the income-earning abilities of each of the parties and "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony...." Reimbursement alimony is an adjustment aimed at repaying the supporting spouse for financial contributions that enhanced the student spouse's income-earning ability. It is based on notions of fairness and equity, and therefore falls within the ambit of our alimony statute.

Determining the amount of reimbursement alimony will be within the discretion of the trial court. The Supreme Court of New Jersey suggests that an award should include "*all* financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses, and any other contributions used by the supported spouse in obtaining his or her degree or license." *Mahoney*, 453 A.2d at 534. Where the student spouse also contributes earnings or loan proceeds, the working spouse's contribution may be difficult to trace. In such a situation, the Supreme Court of Minnesota has offered a more mathematical approach. It starts with total income for the period in question, and nets out half the couple's living

---

5. Section 48–2–32(c) provides:

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution ... after a consideration of the following:

\* \* \* \* \* \*

(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.

expenses to account for the supporting spouse's own consumption:

> It is this Court's view that the award should have been limited to the monies expended by respondent for petitioner's living expenses and any contributions made toward petitioner's direct educational costs. To achieve this result, we subtract from respondent's earnings her own living expenses ... [as follows]:

> working spouse's financial contributions to joint living expenses and educational costs of student spouse

> less

> 1/2 (working spouse's financial contributions *plus* student spouse's financial contributions *less* cost of education)

> equals

> equitable award to working spouse

*DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 759 (Minn. 1981). Recognizing that the amount of reimbursement alimony depends on the facts in each case, we do not adopt a specific method for computing that amount. The trial court, if it concludes that reimbursement is merited, should try to make a fair and reasonable award based on whatever method it deems appropriate.

■ Where the supporting spouse has delayed his or her education, rehabilitative alimony may also be an issue. This Court said recently:

> "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." [Syl. pt. 1, *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984)] Rehabilitative alimony has been used frequently when a dependent spouse enters a marriage with marketable skills, which then deteriorated through lack of use, or the dependent spouse is capable of becoming self-supporting through training or academic study. In these circumstances, an

award of alimony for a limited time is appropriate to give a dependent wife an opportunity to revitalize old skills or acquire new ones.

*Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449, 451 (1987) (footnote omitted). In cases such as the one before us, both reimbursement and rehabilitative alimony may be appropriate.

■ We do not hold that every person who contributes to the education of a spouse is entitled to reimbursement alimony. As mentioned above, the supporting spouse in a marriage of many years should be compensated in the division of marital property. *See* W.Va. Code § 48-2-32(c)(3). Similarly, reimbursement alimony would be inappropriate where the professional degree was not sought with the expectation of achieving a higher standard of living for the family. When, for example, a homemaker of many years returns to school for a teaching certificate, or when a successful executive takes a sabbatical to pursue a doctorate in philosophy or literature, the supporting spouse should not ordinarily be reimbursed for contributions to the other's education.

### III.

■ Finally, we find appellant's assignments of error with respect to permanent alimony and the award of costs and fees to be without merit, and discuss briefly the reasons why. The appellant asserts that the court should have awarded her permanent alimony, given her husband's expected financial condition. Reviewing the factors set out in W.Va. Code § 48-2-16, however, we do not find that the trial court abused its discretion by denying a permanent award. The parties were married and living together only a short time (four years). Rebecca Hoak appears to have the desire and the means to complete a professional education of her own in accounting, and her income-earning ability is therefore good.[6] She holds a college degree, and has been absent from the job market for only a

---

**6.** Her pursuit of additional education depends, of course, on the award of some form of limited alimony.

few years. These factors and others apparent from the record convince us that the judge's ruling was not an abuse of discretion.

■ Rebecca Hoak also alleges error in the trial court's award of only 75% of her attorney's fees and half the court costs, and its failure to require the appellee to pay a $1,000 expert fee. West Virginia Code § 48–2–10 (1986) places the award of costs within the sound discretion of the trial court, and we will not disturb the trial court's ruling on these issues on appeal unless there is a clear abuse of discretion. *See* syl. pt. 3, *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16 (1959). The court in this case made a substantial award of attorney's fees, and does not appear clearly to have abused its discretion by not awarding the full amount of costs requested.

For the reasons cited above, we reverse the judgment of the circuit court, and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.