OPINION OF THE COURT
H. Patrick Leis, J.
The parties herein were married on September 22, 1982. There are no infant issue of the marriage. This action for divorce was commenced on November 28, 1986. Accordingly, this is a marriage of short duration. Defendant husband is 29 years of age while plaintiff wife is 31. Defendant husband is employed as an associate actuary for New York Life Insurance Company earning approximately $72,000 annually. Plaintiff wife is employed as a sales coordinator for American Technical Ceramics earning approximately $27,000 per year.
During the course of the trial, plaintiff wife withdrew her cause of action for divorce and defendant husband went forward uncontested on his counterclaim for divorce on the ground of cruel and inhuman treatment. Finding the allegation proven as alleged, the court grants defendant husband a divorce on said ground.
Herein, the court is confronted with three novel issues which it must resolve in order to equitably distribute the parties’ marital property:
(1) Pursuant to the holding of the Court of Appeals in the landmark case of O’Brien v O’Brien (66 NY2d 576 [1985]), is attainment of a professional distinction such as a membership in a professional society, specifically, becoming a follow in the Society of Actuaries, a marital asset subject to equitable distribution?
(2) If so, must the spouse seeking to share in the enhanced earning potential prove that she contributed in some manner to the attainment of her husband’s fellowship?
(3) Where a spouse has made separate property contributions to the acquisition of marital property, such as a marital home, should he or she receive, in addition to the return of said separate property contribution, interest or appreciation generated by said contribution, separate and apart from the equitable distribution award?
Question number one must be answered in the affirmative. With the advent of O’Brien v O’Brien (supra) and its progeny (McGowan v McGowan, 142 AD2d 355 [2d Dept 1988], *32 lv denied NYLJ Mar. 10, 1989, at 25, col 1 [2d Dept]; Morimando v Morimando, 145 AD2d 609 [2d Dept 1988]; Freyer v Freyer, 138 Misc 2d 158 [Sup Ct, Suffolk County 1987]; Golub v Golub, 139 Misc 2d 440 [Sup Ct, NY County 1988]), a trend has developed wherein the courts will consider as a marital asset, the enhanced earning capacity that a party has achieved during marriage by virtue of attaining a professional license, academic degree or other accomplishment. Of course, the value of the enhanced earning capacity is something that must be proven at trial. Here, defendant husband was awarded a fellowship in the Society of Actuaries during his marriage to plaintiff. Certainly, such distinction may enhance the earning capacity of the recipient thereof. Accordingly, the court holds that such a professional distinction and its resultant enhanced earning capacity is a marital asset.
Question number two must likewise be answered in the affirmative. In O’Brien v O’Brien (supra), defendant wife played a major role during nearly all of the nine years of their marriage helping her husband to attain his medical license. She contributed nearly all of her earnings to that joint effort. She sacrificed her own educational and career opportunities and she lived with the plaintiff in Mexico for 2>V% years while he attended medical school. In short, Mrs. O’Brien made specific contributions that enabled Dr. O’Brien to attain his medical license (Domestic Relations Law § 236 [B] [5] [d] [6], [9]; [e]). It was these contributions which represented investments in the economic partnership of the marriage, and resulted in the professional license becoming the product of the parties’ joint efforts. It was thus these specific contributions which provided the basis upon which Mrs. O’Brien was entitled to share in the enhanced earning potential of Dr. O’Brien’s medical license.
Here, however, the court holds that plaintiff wife may not share in the enhanced earning capacity generated by fellowship in the Society of Actuaries since she did not contribute to its attainment. Defendant is a unique individual in that he studied on his own during working hours without interrupting his performance at his place of business. There was no cost attached to his studies and plaintiff wife continued at her chosen occupation throughout the marriage. This was a short marriage in duration and she made no sacrifices with respect to her own educational or career goals. In addition, the testimony established that the parties did not share in taking care of the house and household duties. Rather, defendant *33 husband performed most of those duties. He did all of the painting, most of the house cleaning and laundering of clothes. He ironed his own clothes, cooked, did the plumbing repairs, installed a sprinkler system, did all of the landscaping, the carpentry work, installed electrical fixtures and air-conditioners and sewed their drapes. He even did all of the repair and maintenance work on the family cars making it unnecessary to even take the cars to an auto mechanic for servicing.
With regard to defendant’s attainment of his fellowship in the Society of Actuaries, the court finds that he is a uniquely bright and hardworking individual and has earned his fellowship as a result of his own superior intelligence and industry. In order to become a féllow in the Actuary Society, defendant husband had to pass 10 examinations. Plaintiff wife did not assist him in studying or make any other direct or indirect contributions which this court can rely on in finding that his acquisition of the fellowship was a joint effort. The court notes parenthetically that Dr. William Hansen, a senior vice-president for New York Life, where defendant is employed as an actuary, testified in effect that it was his opinion that defendant, due to his innate abilities, would be earning the same amount of money or more with New York Life if he had not passed the actuary examinations and become a fellow in the Actuary Society. He also stated that defendant’s future potential with New York Life will probably be in the area of management, an area where it will not matter whether or not defendant is a fellow in the Society of Actuaries. Be that as it may, the court finds that plaintiff wife provided no direct or indirect contributions of any consequence which would entitle her to share in defendant husband’s enhanced earning capacity.
As to question number three the court holds that the defendant is not limited to just the return of his separate property contribution. Title to the marital residence is in the joint names of the parties. It was purchased for $50,990 with a mortgage of $40,700. Defendant husband contributed approximately $13,000 or 25% of the total cost out of his separate property. There is no question that this house is marital property. The only issue is how the asset should be distributed. The parties have stipulated to a value of $133,000 as of September 30, 1987.
In making its determination as to what plaintiff wife’s equitable share in this house should be, the court has consid *34 ered the fact that defendant husband has made all the major improvements to the residence. He has also performed all the maintenance and upkeep on the residence himself, avoiding totally the use of any servicemen or repairmen. The law in New York is well settled that jointly held property need not be distributed equally (Arvantides v Arvantides, 64 NY2d 1033 [1985]; Duffy v Duffy, 94 AD2d 711 [2d Dept 1983]). In fact, the Duffy court found that it was error for the trial court to award the parties an equal division of the net proceeds from the sale of the marital residence in the absence of any monetary contributions on the part of plaintiff toward the acquisition of marital property where the marriage was of short duration (there approximately three years).
In Kobylack v Kobylack (111 AD2d 221 [2d Dept 1985]), the court held it was proper to base equitable distribution of the parties’ marital property on relative economic contributions to the marriage where both parties were employed full time throughout their short childless marriage and contributed to household expenses and acquisitions of marital property in accordance with their respective earnings. There, Special Term had arrived at a formula, whereby it distributed 72% of the value of the marital property to plaintiff and 28% to defendant based upon the average ratio of the parties’ earnings during the marriage as revealed by their income tax returns. This court likewise has decided to distribute the marital residence based on the parties’ economic contributions giving 70% of the value thereof to the defendant husband and 30% of the value thereof to the plaintiff wife. Here, the court notes that during the course of this short marriage, defendant husband earned $166,525 while plaintiff wife earned $68,213, and, thus, defendant husband earned approximately 70% of their total income while plaintiff wife earned approximately 30% thereof.
The court also notes that defendant husband made a separate property monetary contribution in the sum of $13,000 toward the acquisition of the marital residence, which separate property contribution was approximately 25% of the purchase price thereof. In addition to receiving back this separate property contribution as a setoff against the "marital estate” (Coffey v Coffey, 119 AD2d 620 [2d Dept 1986]; Monks v Monks, 134 AD2d 334 [2d Dept 1987]), equity dictates that the separate property contributor receive as a setoff that portion of the appreciation which was generated by the separate property contribution. Here, this will be the sum of $33,250, *35 which is to be subtracted from the stipulated $133,000 value. This $33,250 represents 25% of the present value of the house as stipulated. Accordingly, the court directs that the house be sold and from the proceeds therefrom, the mortgage balance of approximately $39,937 is to be paid off, defendant husband is to receive the aforestated $33,250, and the net balance of said proceeds are to be distributed in the proportion of 70% thereof to defendant husband and 30% thereof to plaintiff wife.