[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dissolution action presents an issue which has been addressed in many states but not yet resolved in Connecticut: whether a professional degree constitutes property which is subject to distribution in a divorce proceeding.
Other jurisdictions have previously confronted the aptly named "diploma dilemma."[1] See Stevens v. Stevens,
CT Page 344492 N.E.2d 131 (Ohio 1986) and Downs v. Downs, 574 A.2d 156 (Vt. 1990). The typical situation is one where the parties agree, during the marriage, that one of them will pursue an advanced degree. The other spouse is employed in order to support the family and the educational efforts of the student spouse. After much hard work and sacrifice on both their parts, the student spouse achieves his degree.[2] On the threshold of a lucrative professional career begot by the degree, the marriage breaks down. Usually, there are little property and few assets to distribute other than the professional degree itself. The issue confronting the court is whether the supporting spouse should be compensated for her contributions to the student spouse's degree and, if so, how?
Before confronting the legal issues, the court finds the following facts in the case at bar.
The plaintiff and the defendant married on September 23, 1983 in Fayetteville, North Carolina. The plaintiff has continuously resided in the state of Connecticut for at least twelve months prior to bringing this action. The marriage has broken down irretrievably.
At the time of their marriage, the plaintiff husband was 23 years old and a sergeant in the United States Army. The defendant wife was 43 years old and working as a bartender. At the time the parties met, the defendant had six children, three of them from a prior marriage. The parties have had no children together.
The plaintiff completed his military service in June 1985. He enrolled in Campbell University and received his undergraduate degree in 1990. Upon graduation, he entered medical school at East Carolina University. He received his medical degree in 1994.
The defendant also furthered her education during the marriage. In 1985, she received training as a surgical technician. She subsequently enrolled in Fayetteville Community College and obtained her associate's degree in nursing. In 1991, she received her degree as a registered nurse.
Each of the parties paid for the cost of their own education. The plaintiff paid for his undergraduate and medical school educations through a combination of loans and grants. The defendant paid for her training and education through her employment and state financial aid. CT Page 345
Prior to the plaintiff entering medical school the parties supported themselves through their respective jobs. The plaintiff delivered newspapers and performed landscaping. The defendant initially continued to tend bar and eventually obtained employment as a surgical technologist.
During medical school, the plaintiff was not employed. The defendant primarily shouldered the day to day living expenses for the both of them through her employment as a nurse except that some living expenses were defrayed by loans received by the plaintiff from medical school and from the plaintiff's grandmother. The defendant also fulfilled the role of homemaker while the plaintiff was in medical school, preparing meals and doing the laundry.
In 1994 after the plaintiff's graduation from medical school, the parties moved to Connecticut in order for the plaintiff to begin a residency program in general surgery at St. Raphael's Hospital.
The plaintiff is presently 36 years old and in relatively good health. He is in the midst of his third year of residency at St. Raphael's Hospital. The plaintiff has not decided whether he will pursue a career as a plastic surgeon or as a general surgeon. He has not yet obtained his license to practice medicine. He has a gross annual income of $45,660.
The defendant is presently 56 years old and also in good health. She is employed as a staff nurse working in the per diem pool at Yale New Haven Hospital. She holds a license in Connecticut as a registered nurse. In 1994, the defendant earned more than $67,000 from nursing. She is currently working on a part time basis and earning approximately $36,000 annually.
The parties have few assets. They own no real property and their personal property has no significant value. Prior to their separation, they did have funds in a joint savings account and a joint brokerage account. The plaintiff unilaterally withdrew approximately $5,800 from these accounts for his own use when he moved out of the marital home in May 1996.
Each of the parties points to the other as the cause of the breakdown of the marriage. The court does not find that either party is singularly at fault for the dissolution of the marriage. CT Page 346
The defendant has asked the court to distribute as part of the dissolution proceedings the value of the plaintiff's medical degree. Toward that end, she offered at trial the testimony of Stephen J. Shapiro, who has a Ph.D. in economics and is the chairman of the economic and finance department at the University of New Haven. Professor Shapiro testified that the present value of the plaintiff's future earning capacity as a plastic surgeon is $3,460,000. He also testified that the present value of the plaintiff's future earning capacity as a general surgeon is $2,835,000. He found that the average present value between a career in general surgery and a career in plastic surgery was $3,148,000. Professor Shapiro suggested that this average present value was the appropriate figure for determining the present value of the plaintiff's future earning capacity.
The defendant urged the court to use the present value of the plaintiff's future earning capacity as the value of the plaintiff's medical degree and to divide it equitably between the parties. The plaintiff asserted that his medical degree does not constitute property that can be distributed in a dissolution proceeding.[3]
The courts in other states have not been uniform in their treatment of this issue A substantial majority of jurisdictions which have ruled on the question have held that professional license or degree is not property that can be distributed in a divorce proceeding.[4] See e.g. Becker v. Perkins-Becker,669 A.2d 524 (R.I. 1996); Downs v. Downs, 574 A.2d 156 (Vt. 1990);Hoak v. Hoak, 370 S.E.2d 473 (W.Va. 1988); Drapek v. Drapek,503 N.E.2d 346 (Mass. 1987); Stevens v. Stevens, 492 N.E.2d 131 (Ohio 1986); Mahoney v. Mahoney, 453 A.2d 527 (N.J. 1982); and In ReGraham, 574 P.2d 75 (Colo. 1978). The rationale most cited by the courts is that expressed in In Re Graham:
 An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the CT Page 347 future acquisition of property. In our view, it has none of the attributes property in the usual sense of that term.
In Re Graham, supra, 574 P.2d 77.
Although many courts are in agreement that a degree is not property, they have not been unanimous on how an advanced degree procured during the marriage should be treated. One recognized method is to reimburse the supporting spouse for her financial contributions toward the attainment of the professional degree by the student spouse. See Mahoney v. Mahoney, 453 A.2d 527 (N.J. 1982) and Hoak v. Hoak, 370 S.E.2d 473 (W.Va. 1988).
In Mahoney, the New Jersey Supreme Court introduced the concept of "reimbursement alimony" as a means of compensating the supporting spouse who has suffered a loss of support or been deprived of a better standard of living in the future. The court held that "regardless of the appropriateness of permanent alimony or the presence or absence of marital property to be equitably distributed, there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. Such reimbursement alimony should cover all financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license." Mahoney v. Mahoney, supra, 453 A.2d 534.
It has also been suggested that rehabilitative alimony is appropriate in situations where a supporting spouse has delayed her own education in order to support her spouse in his educational efforts. See Hoak v. Hoak, 370 S.E.2d 473, 479
(W.Va. 1988). Such alimony could be considered even though the supporting spouse does not need support in order to develop marketable skills and enter the workforce because she is already gainfully employed. Id.
Most courts have resolved the issue by considering the professional degree or license to be a factor, similar to other factors, used in determining the allocation of alimony and property. See e.g. Downs v. Downs, 574 A.2d 156 (Vt. 1990);Drapek v. Drapek, 503 N.E.2d 346 (Mass. 1987); Stevens v.Stevens, 492 N.E.2d 131 (Ohio 1986); Washburn v. Washburn,677 P.2d 152 (Wash. 1984); In Re Graham, 574 P.2d 75 (Colo. 1978); and Haywood v. Haywood, 415 S.E.2d 565 (N.C.App. 1992). The CT Page 348 precise import of the professional degree has varied from state to state. Some courts have looked to the increased earning capacity engendered by the degree, see Downs v. Downs,574 A.2d 156 (Vt. 1990) and Drapek v. Drapek, 503 N.E.2d 346 (Mass. 1987); others have emphasized the contributions of one spouse to the education of the other spouse, see In Re Graham, 574 P.2d 75
(Colo. 1978) and Haywood v. Haywood, 415 S.E.2d 565 (N.C.App. 1992); while still others have found both of these factors as well as other circumstances related to the degree, such as the lost educational and career opportunities of the supporting spouse, to be appropriate for the trial court to consider, seeWashburn v. Washburn, 677 P.2d 152 (Wash. 1984).
The minority view and the position advocated by the defendant is that a professional degree is property that can and should be distributed in a marriage dissolution proceeding. See O'Brien v.O'Brien, 489 N.E.2d 712 (N.Y. 1985). In O'Brien, the Court of Appeals of New York held that a professional license constitutes marital property that should be considered by the trial court in distributing the assets of the marriage. The court rejected the argument that a professional license lacks the traditional attributes of property and that its value is too speculative to determine. Id. 718.[5]
As noted previously, no clear markers have yet been laid down in Connecticut guide trial courts through the thicket of views on the treatment of professional degrees upon dissolution of the marriage. The facts of this case make it unnecessary to resolve some of the issues raised in other jurisdictions.
It is not necessary to address the issue of reimbursement alimony here. The defendant has not raised a claim to be reimbursed for any contributions she may have made toward the plaintiff's medical education and evidence of the value of those contributions was not entered into evidence. Cf. Mahoney v.Mahoney, supra, 453 A.2d 527.
Rehabilitative alimony is also not applicable. During the marriage, the defendant was able to pursue her educational goals and achieve her chosen career as a nurse. Cf. Hoak v. Hoak,
supra, 370 S.E.2d 473.
The defendant's entreaty that the plaintiff's medical degree be deemed property which should be apportioned upon dissolution of the marriage presents a more difficult question. CT Page 349
The distribution of property upon divorce is governed by statute. See General, Statutes § 46b-81. Neither § 46b-81 nor the other statutory sections in the dissolution chapter specifically define the term "property." However, significant guidance as to the meaning of the word "property" as used in § 46b-81 can be found in Krafick v. Krafick, 234 Conn. 783 (1995).
In Krafick, the Connecticut Supreme Court was confronted with the issue of whether pension benefits should be classified as property pursuant to § 46b-81. In the absence of a statutory definition of property, the Supreme Court looked to "the common understanding expressed in the law and in dictionaries." Id. 794 quoting Southington v. State Board of Labor Relations,210 Conn. 549, 561 (1989). It cited with approval the definition of property found in Black's Law Dictionary (6th Ed. 1990): the term is "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible,
visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises and incorporeal hereditaments." Id.
The court found that the term property used in § 46b-81
should be interpreted broadly. It also stated that "it is widely recognized that the primary aim of property distribution is to recognize that marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute — directly and indirectly, financially and nonfinancially — the fruits of which are distributable at divorce." Id. 795. The court went on to hold that pension benefits constituted property under § 46b-81.
If the analysis were to stop here, I would be compelled to conclude that a medical degree was also property pursuant to §46b-81. Further inquiry, however, is warranted. Unlike pension benefits, a professional degree does "run afoul of the limitation, recognized in the context of inheritance and trust interests, that § 46b-81 applies only to presently existing property interests, not "mere expectancies."" Krafick v. Krafick,
supra, 234 Conn. 797.
The value of a professional degree, in the context of a dissolution proceeding, is the potential for increased income in CT Page 350 the future. It is the inability of the supporting spouse, after years of toil and sacrifice, to participate in the future increased income the student spouse that lies at the heart of her complaint of unfairness. The professional degree itself has become an issue in this case as it does in other cases raising the diploma dilemma because the degree has not yet generated substantial income and property.[6]
In the case at bar, the defendant asked the court to distribute the present value of the future earning capacity of the plaintiff as a surgeon. The future income on which the present value is based is a mere expectancy. The income to which the degree relates "is at the time nonexistent and may never exist." See Krafick v. Krafick, supra, 234 Conn. 797. The plaintiff as the holder of a medical degree has no enforceable right to the income. Id.
The division of property in a divorce proceeding can not include the expectation of income in the future. "With respect to future property, we think the rule must be that when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division. We agree with the view that the relevance of probable future income in determining the fair and equitable division of existing property does not establish jurisdiction to make allowances from property other than that held at the time." (Citations and quotation marks omitted). Rubin v. Rubin, 204 Conn. 224 (1987).
The nature of a property award in a dissolution proceeding makes apparent the necessity for this rule. A property award may not be modified. See Connolly v. Connolly, 191 Conn. 468 (1983). The plaintiff would be obligated to pay the sums ordered by the court even if he were not to receive the future income on which the orders were based.
According to the defendant's expert, the average present value of the plaintiff's future earning capacity is $3.1 million. The defendant is asking that the court enter a property award payable in annual installments based upon this sum. There are a myriad of circumstances, including failing to complete his residency, failing to pass his surgical boards or suffering a disability, that could prevent the plaintiff from earning the projected $200,000 plus annually that the defendant's expert expects.[7] There would be no way to correct the injustice if CT Page 351 he does not.
Recognizing the plaintiff's medical degree as property has the added problem of; accurately determining its value. Courts in other jurisdictions have rejected the claim that a professional degree is property because it is not susceptible to valuation. It can not be bought or sold and it has no exchange value. Any value it does have is unduly speculative. See Stevens v. Stevens,492 N.E.2d 131 (Ohio); Hoak v. Hoak, 370 S.E.2d 473, 479 (W.Va. 1988); Mahoney v. Mahoney, 453 A.2d 527 (N.J. 1982) and In ReGraham, 574 P.2d 75 (Colo. 1978).
This case vividly illustrates the valuation difficulties. The defendant's expert gave the court three figures as to the present value of the plaintiff's future earning capacity: $2.8 million as a general surgeon, $3.5 million as a plastic surgeon and $3.1 million as the average between the two. If the court uses the average figure as the defendant's expert suggests, the amount is too high should the plaintiff become a general surgeon and too low should he pursue plastic surgery.[8] Also, it may well be appropriate for the court to subtract from this figure the present value of what a non-degree holder would earn in order to accurately reflect the value of the degree. If so, what job should the court use? How do you determine the occupation and future income of a person talented and committed enough to obtain a medical degree?
In light of the expectancy and valuation difficulties posed by viewing a professional degree as property, I find that the plaintiff's medical degree is not property pursuant to General Statutes § 46b-81.[9] The plaintiff's medical degree, however, is not irrelevant to these dissolution proceedings. It is appropriately a factor that the court should consider in determining the distribution of property and the awarding of alimony.
Section 46b-81 of the General Statutes delineates the circumstances that the court shall consider in determining the assignment of property. Section 46b-82 does the same for the payment of alimony. Both sections require the court to look at the vocational skills and employability of the parties. Section46b-81 also includes for consideration "the opportunity of each [party] for future acquisition of capital assets and income" and further states that "the court shall also consider the contribution of each of the parties in the acquisition, CT Page 352 preservation or appreciation in value of their respective estates."
The criteria set forth in these statutes requires the court to weigh a number of circumstances related to the attainment of a professional degree during a marriage in determining the appropriate assignment of property and the award of alimony: the future employability of the degree holder, see Lawler v. Lawler,16 Conn. 193 (1988); the contributions, both financial and nonfinancial, made by the supporting spouse toward assisting the student spouse in the attainment of his professional degree, seeO'Neill v. O'Neill, 13 Conn. App. 300, 311 (1988); and the lost educational and career opportunities of the supporting spouse. These factors may be given substantial weight by the trial court. "While the trial court must consider the delineated statutory criteria, no single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case."Carpenter v. Carpenter, 188 Conn. 736, 740-41 (1982).
The consideration of the statutory factors in this case do not justify the award of alimony to the defendant. The defendant provided no direct financial contributions to the plaintiff's attainment of his medical degree. He paid for his own education costs and incurred large medical school loans, of which approximately $40,000 remains outstanding. The defendant also did not forgo educational and career opportunities in order to support her husband. Much to her credit, she was able to further her education and attain her career goal of becoming a licensed nurse during the marriage. She is presently employed as a nurse and is able to financially support herself at a standard of living to which she was accustomed during the marriage.
The economic condition in which a divorce decree leaves the parties is a paramount concern for the court in a dissolution proceeding. A severing of the marriage bond in this case will not result in just one party facing a rewarding professional future. Both parties will remain able to support themselves and able to pursue their chosen career.
After carefully considering all the relevant statutory criteria, including those contained in General Statutes § 46b-81
as they relate to the assignment of property and § 46b-82 as they relate to the award of alimony, the court enters the following orders: CT Page 353
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. No alimony is awarded to either party.
3. Each party shall retain the personal property currently in their possession.
4. Each party shall retain sole ownership of the automobile currently in their possession.
5. Each party shall be solely responsible for payment of the liabilities listed on their respective financial affidavits. The plaintiff shall be solely responsible for the debt listed to the IRS.
6. The plaintiff shall pay the defendant $5,800 as a property settlement. This sum shall be paid in two equal installments. The first payment of $2,900 is due on February 1, 1997 and the second payment of $2,900 is due on September 1, 1997.
7. Each party shall be responsible for their respective attorney's fees and costs.
Jon M. Alander, Judge