# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**AMY W.,**
**Petitioner Below, Petitioner**

vs)  No.  14-0209   (Kanawha County 11-D-1176)

**TRAVIS W.,**
**Respondent Below, Respondent**

**FILED**

**September 25, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner, Amy W.,[1] by counsel Tim Carrico, appeals the January 24, 2014, order of the Circuit Court of Kanawha County affirming an April 11, 2012, final divorce order entered by the Family Court of Kanawha County that awarded reimbursement alimony to the respondent Travis W. in the amount of $166,847.15.  In this appeal, Amy W. contends that the family court erred in calculating the reimbursement alimony award by failing to take into consideration evidence that she used student loans to pay the costs of her advanced education and to replace the income the parties lost as a result of her unemployment while she attended graduate school.  Travis W., by counsel Allyson E. Hilliard, filed a response maintaining that the family court committed no reversible error.

Upon review of the parties' arguments, the appendix record, and the pertinent authorities, we reverse the final order and remand this case to the family court for further proceedings to the extent necessary to recalculate the reimbursement alimony award.  This case does not present a new or significant question of law and, therefore, satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure.  As such, it is properly disposed of through this memorandum decision.

The parties were married on November 25, 1994, in Sevier County, Utah. They have two children, a son born December 11, 2000, and a daughter born September 13,

---

[1] In sensitive matters, we use the parties' last initials rather than their full surnames. *See In re Emily*, 208 W.Va. 325, 329 n.1, 540 S.E.2d 542, 546 n.1 (2000); *see also* W.Va. R. App. P. 40(e).

1

2003.  In March 2009, the family moved to West Virginia from Utah in order for Amy W. to attend Mountain State University to obtain her master's degree to become a nurse anesthetist.  Before moving to West Virginia, Amy W. had been employed in Utah as a registered nurse earning approximately $40,000.00 annually.  After the parties relocated to West Virginia, Amy W. attended Mountain State University on a full-time basis.  Travis W., an engineer, secured employment, earning an annual salary of $69,450.00.[2]  Amy W. received her master's degree on May 13, 2011, and filed a petition for divorce on June 13, 2011.  Thereafter, she moved to Idaho where she is now employed as a nurse anesthetist with an annual salary of at least $135,000.00.  Travis W. still resides in West Virginia and is the primary custodial parent of the parties' two children.[3]

Prior to the final divorce hearing, Travis W. filed a request with the family court for reimbursement alimony pursuant to *Hoak v. Hoak*, 179 W.Va. 509, 370 S.E.2d 473 (1988).  Syllabus point two of *Hoak* states:

> The trial judge in a divorce proceeding may in an appropriate case award reimbursement alimony to a working spouse who contributed financially to the professional education of a student spouse, where the contribution was made with the expectation of achieving a higher standard of living for the family unit, and the couple did not realize that expectation due to divorce.

*Id.* at 510, 370 S.E.2d at 474.  Travis W. asserted that the purpose of Amy W. returning to school to obtain a master's degree was to increase the standard of living for their family. Travis W. further averred that while Amy W. was an unemployed graduate student, he was working full-time and was the family's sole source of financial support.  Travis W. requested reimbursement alimony in the amount of $166,847.15, which he indicated was one-half of the parties' total living expenses during the time period that Amy W. was attending Mountain State University.  In support of his request, Travis W. submitted the parties' joint bank account statements detailing the parties' monthly living expenses. He also submitted documentation showing that the parties took early distributions from their retirement accounts to pay for the expenses they incurred in moving to West Virginia.

___

[2]Travis W. had also been employed as an engineer in Utah earning approximately $75,000.00 annually.

[3]Pursuant to the final divorce order, Amy W. pays monthly child support in the amount of $1,422.13.

During a hearing before the family court on November 2, 2011,[4] Amy W. testified that she had obtained student loans totaling approximately $229,000.00 to fund her graduate education. She stated that $77,752.90 of that amount was used to pay her tuition and expenses and that the remainder was deposited into the marital bank accounts between March 2009 and May 2011 to replace her lost income while she obtained her degree. Following the final hearing, the family court granted Travis W.'s reimbursement alimony request and ordered Amy W. to reimburse him in the amount of $166,847.15 through $2,000.00 monthly installments for a period of six years and eleven months commencing October 1, 2011.[5]

Amy W. appealed this decision to the circuit court, asserting that she had introduced substantial evidence that she funded the marital bank accounts with money obtained through her student loans while she was in graduate school; that she is now one hundred percent responsible for repaying the loans pursuant to the final divorce order; and that the family court failed to take these facts into consideration when calculating the reimbursement alimony award granted to Travis W. Upon review, the circuit court rejected Amy W.'s assertions, stating in its final order that "[n]one of the petitioner's allegations are supported by the record. Specifically, petitioner *introduced no documentary evidence at the trial* that she funded anything." (Emphasis added).

Our standard of review for matters arising in divorce cases was set forth in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

---

[4]The parties appeared before the family court for the final divorce hearing on November 2, 2011. Amy W., who was representing herself at that juncture, participated in the hearing by telephone call from Idaho. At the end of that hearing, the family court decided to give the parties additional time to supplement their financial statements. The parties appeared before the family court again on January 4, 2012. Thereafter, the family court issued the final divorce order.

[5]Amy W. also made a claim for alimony that was denied in the final divorce order.

3

Recognizing that reimbursement alimony must be determined on a case-by-case basis given its fact specific nature, this Court has chosen not to adopt a particular method for calculating the amount that may be awarded. *Hoak*, 179 W.Va. at 515, 370 S.E.2d at 479. However, we have made clear that the purpose of reimbursement alimony is "to repay or reimburse the supporting spouse for his or her financial contributions to the professional education of the student spouse." *Id.* at 513, 370 S.E.2d at 477. In other words, "[r]eimbursement alimony is an adjustment aimed at repaying the supporting spouse for financial contributions that enhanced the student's spouse's income-earning ability." *Id.* at 514, 370 S.E.2d at 478. As such, reimbursement alimony should be "based on the actual amount of contributions." *Id.* at 513, 370 S.E.2d at 477.

Upon review, we find that the lower courts committed reversible error by failing to consider the evidence presented by Amy W. that showed that she obtained student loans to replace the income the parties lost when she quit working in order to attend graduate school on a full-time basis. The record shows that Amy W. used the student loan money not only to pay for her school tuition and expenses, but also to fund the parties' joint bank accounts. Inexplicably, the decisions of lower courts were based upon the erroneous conclusion that Amy W. failed to submit documentary evidence to support her claims. The record simply does not support that conclusion. Rather, the record reflects that Amy W. submitted documentation of her student loans to the family court on September 2, 2011. Moreover, the marital bank account statements submitted to the family court by Travis W. show regular deposits of "Mountain State Refund" checks during the time period that Amy W. was attending Mountain State University. In addition, Amy W. testified in great detail during the November, 2, 2011, hearing regarding the use of her student loan money. When questioned about the matter, Travis W. acknowledged that Amy W. had obtained at least $180,000.00 through student loans while she attended Mountain State University. Thus, the evidence established that although Amy W. was an unemployed student, she was not dependent upon financial contributions from Travis W. in order to obtain her degree and that she funded the parties' marital bank accounts with money obtained through student loans.

Given the fact that Amy W. is now solely responsible for repaying her student loans pursuant to the final divorce order, we find that the family court erred by awarding reimbursement alimony to Travis W. in the amount of $166, 847.15. Therefore, the January 24, 2014, final order of the Circuit Court of Kanawha County affirming the April 11, 2012, family court order is reversed. However, because there is no dispute that the parties liquidated their retirement accounts to facilitate their move to West Virginia so that Amy W. could attend Mountain State University, we further find that Travis W. is entitled to

4

reimbursement alimony in an amount equal to one half of those retirement funds.[6]  Because we cannot ascertain the exact amount of retirement funds that were liquidated by the parties based on the record before us, we remand this case to the family court for further proceedings to the extent necessary to recalculate the reimbursement alimony award consistent with our decision herein.

Reversed and remanded with directions.

**ISSUED:** September 25, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Brent D. Benjamin.

---

[6]Amy W. concedes in her brief that Travis W. is entitled to reimbursement alimony for one-half of the retirement funds liquidated by the parties.  She maintains that she has already paid Travis W. reimbursement alimony in an amount greater than one-half of the retirement funds and, therefore, she is entitled to a refund to the extent that she has overpaid. This is a matter for the family court to resolve upon remand.

5