STEVENS, APPELLANT, v. STEVENS, APPELLEE.

[Cite as Stevens v. Stevens (1986), 23 Ohio St. 3d 115.]

(No. 85-552—Decided April 23, 1986.)

*Nicely & Wagner* and *Judith A. Nicely,* for appellant.
*McDowall & Whalen and Robert H. McDowall,* for appellee.

CELEBREZZE, C.J. This court is now asked for the first time to resolve an issue quite aptly referred to as "the diploma dilemma," that is, whether a spouse's professional degree obtained during a marriage is marital property subject to division and distribution upon divorce. This dilemma typically arises in those (unfortunate) situations in which a wife supports her husband while he obtains a professional degree and then, just as the husband stands on the verge of affluence, the parties divorce. Often, the standard of living during the marriage is fairly minimal and there are few assets to divide, other than the professional degree itself. In the instant case, appellant shouldered a majority of the living and education costs for her former husband while he obtained his veterinary degree. This case is somewhat atypical, however, in that the marriage continued

for several years after her husband began his career and thus appellant was able to share in some of his professional earnings.

Courts which have faced the issue of whether a professional degree or license is marital property acknowledge that it would be unfair not to recognize the contribution of the supporting spouse, but differ in the manner in which that spouse is to be compensated for her efforts. The challenge is to strike a balance somewhere between subjecting the husband to a life of professional servitude and leaving the wife in near penury, without sufficient financial resources with which to improve her station in life.

With this balancing process in mind, we must reject appellant's contention that her former husband's veterinary degree and the enhanced value of his future earnings as a result of obtaining that degree are marital assets in which she is entitled to share.[1] In our view, a professional degree cannot be categorized as "property." This was most eloquently explained by the court in *In re Marriage of Graham* (1978), 194 Colo. 429, 432, 574 P. 2d 75, 77:

"* * * It [a professional degree] does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere

---

[1] This is one of several solutions to the "diploma dilemma" reached by the courts of this state and others.

Most recently, the New York Court of Appeals, in *O'Brien* v. *O'Brien* (1985), 66 N.Y. 2d 576, 498 N.Y. Supp. 2d 743, 489 N.E. 2d 712, declared that a husband's medical license constituted marital property within the meaning of that state's equitable distribution law. Accord *Woodworth* v. *Woodworth* (1983), 126 Mich. App. 258, 337 N.W. 2d 332 (husband's law degree is marital property); *In re Marriage of Washburn* (1984), 101 Wash. 2d 168, 677 P. 2d 152 (husband's veterinary degree is community property subject to division on divorce).

Other states have fashioned reimbursement alimony as an equitable remedy. See *Mahoney* v. *Mahoney* (1982), 182 N.J. Super. 598, 442 A. 2d 1062. See, also, West's Annot. Cal. Civ. Code Sections 4800.3(b) and (c) (Supp. 1986), providing reimbursement with interest for a spouse who contributes to the education or training of a party which substantially increases that party's earning ability.

Still other states have enacted statutes which specifically require courts to consider one spouse's contribution to a professional degree as a factor in property division. See, *e.g.,* Iowa Code Annot. Section 598.21(1) which states that the court shall divide all property equitably after considering, *inter alia,* "e. [t]he contribution by one party to the education, training or increased earning power of the other." R.C. 3105.18 does not specifically provide for consideration of one spouse's contribution to the professional degree of the other as a factor in the division of property or award of alimony.

Finally, several Ohio appellate courts, whose holdings we disapprove today, have held that a husband's license to practice medicine was marital property and that alimony awards could be based on the probable future earnings of the husband. *Daniels* v. *Daniels* (App. 1961), 90 Ohio Law. Abs. 161; *West* v. *West* (June 23, 1978), Montgomery App. No. 5830, unreported; *Lira* v. *Lira* (1980), 68 Ohio App. 2d 164 [22 O.O.3d 231].

expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. * * * [I]t has none of the attributes of property in the usual sense of that term.''

Second, we cannot agree that the worth of a professional degree or license is subject to precise valuation and division at divorce. The amount of speculation attendant to reducing the future value of a professional degree to its present value, as appellant urges us to do, is unacceptably high. Economists can only predict the future earnings of a "typical" professional in a given field and must assume that the degreed spouse will continue in a certain career path.[2] In reality, however, after a divorce a person may choose not to practice his or her chosen profession, may later change to a less lucrative specialty, or may fail in the chosen profession.[3] Such developments cannot be anticipated at the time of divorce. A division of property based on the estimated value of a professional degree or license would be particularly unfair to a professional who wishes to change careers, because a property award cannot be modified after divorce to reflect a change in circumstances. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], paragraph one of the syllabus; *Colizoli* v. *Colizoli* (1984), 15 Ohio St. 3d 333, 334. We therefore conclude that the future value of a professional degree or license does not constitute marital property. Accord *In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 1027-1028, 423 N.E. 2d 1201, 1204; *Frausto* v. *Frausto* (Tex. Civ. App. 1980), 611 S.W. 2d 656, 659; *Ruben* v. *Ruben* (1983), 123 N.H. 358, 361, 461 A. 2d 733, 735; *Hughes* v. *Hughes* (Fla. App. 1983), 438 So. 2d 146,

---

[2] Even in the *O'Brien* case, *supra,* the concurring judge acknowledged the speculative nature of predicting the future earnings of a professional spouse:

"* * * Yet the degree of speculation involved in the award made is emphasized by the testimony of the expert on which it was based. Asked whether his assumptions and calculations were in any way speculative, he replied: 'Yes. They're speculative to the extent of, will Dr. O'Brien practice medicine? Will Dr. O'Brien earn more or less than the average surgeon earns? Will Dr. O'Brien live to age sixty-five? Will Dr. O'Brien have a heart attack or will he be injured in an automobile accident? Will he be disabled? I mean, there is a degree of speculation. That speculative aspect is no more to be taken into account, cannot be taken into account, and it's a question, again, Mr. Emanuelli, not for the expert but for the courts to decide. It's not my function nor could it be.' " *O'Brien, supra,* 66 N.Y. 2d at ____, 498 N.Y. Supp. 2d at 751, 489 N.E. 2d at 720, Meyer, J. concurring.

[3] As also pointed out by the concurring judge in *O'Brien, supra,* a division of property based upon the future value of a professional degree may be unfair to those persons who have completed their professional education but have not, at time of divorce, actually begun their careers:

"* * * Yet a professional in training who is not finally committed to a career choice when the distributive award is made may be locked into a particular kind of practice simply because the monetary obligations imposed by the distributive award made on the basis of the trial judge's conclusion (prophecy may be a better word) as to what the career choice will be leaves him or her no alternative." *O'Brien, supra,* 66 N.Y. 2d at ____, 498 N.Y. Supp. 2d at 751, 489 N.E. 2d at 720, Meyer, J. concurring.

147-150; *Grosskopf* v. *Grosskopf* (Wyo. 1984), 677 P. 2d 814, 822; *Lovett* v. *Lovett* (Ky. 1985), 688 S.W. 2d 329, 332.

The better approach, we feel, was taken in *Gebhart* v. *Gebhart* (1984), 14 Ohio App. 3d 107, 108, where the court stated that in making an award of alimony, the future value of a medical degree acquired by one of the parties during the marriage was not subject to division or transfer upon divorce, but should be considered an element in reaching an equitable award of alimony pursuant to R.C. 3105.18.[4] Accord *Pacht* v. *Jadd* (1983), 13 Ohio App. 3d 363; *Colizoli* v. *Colizoli* (Oct. 7, 1983), Cuyahoga App. No. 45557, unreported, reversed in part on other grounds (1984), 15 Ohio St. 3d 333. The dilemma regarding an equitable award to the supporting spouse in cases such as this is best resolved by applying our existing statutory scheme and treating the professional degree as relevant to the parties' earning abilities, education, expectancies, and the contribution of the spouse as homemaker. Another relevant factor in cases such as this, where the marriage has continued after the husband obtained his degree, is the relatively high standard of living established during the marriage as a result of the husband's professional career. R.C. 3105.18(B)(7).

The court in *Pacht, supra,* observed that the earning ability of the parties was a factor more pertinent to an award of sustenance alimony than to a division of property. Indeed, in the instant case, appellant requests this court to order that she receive equitable compensation payable as sustenance alimony. This is a particularly appropriate technique in situations such as this where appellant, after failure of her marriage, seeks to

---

[4] R.C. 3105.18 reads as follows:

"(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1)  The relative earning abilities of the parties;

"(2)  The ages, and the physical and emotional conditions of the parties;

"(3)  The retirement benefits of the parties;

"(4)  The expectancies and inheritances of the parties;

"(5)  The duration of the marriage;

"(6)  The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7)  The standard of living of the parties established during the marriage;

"(8)  The relative extent of education of the parties;

"(9)  The relative assets and liabilities of the parties;

"(10)  The property brought to the marriage by either party;

"(11)  The contribution of a spouse as homemaker.

"(C) In an action brought solely for an order for alimony under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party."

enhance her future earning capacity by pursuing higher education with a view to a professional career of her own.

Consistent with the foregoing, we hold that a professional degree or license is not marital property and the present value of the projected future earnings of the degreed spouse is not a marital asset subject to division upon divorce. Although not an asset, the future value of a professional degree or license acquired by one of the parties during the marriage is an element to be considered in reaching an equitable award of alimony in accordance with R.C. 3105.18.[5]

We now examine the alimony award in the instant case. A review of the record makes it apparent that the trial court concluded that appellee's veterinary degree was not a marital asset and then ended its analysis without considering the future value of appellant's degree as an element in making its alimony award.

Appellant contends the trial court abused its discretion in setting both the amount and the conditions attached to its alimony order. While a reviewing court may not modify or reverse the trial court's decision unless the decision was either arbitrary, unreasonable or unconscionable, *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, we find that this award constituted an abuse of discretion.

Appellant was awarded the sum of four hundred dollars a month sustenance alimony, the marital home and one of the two family cars. Appellant was also ordered to assume the mortgage on the house and the lien on the car. Appellant was unemployed at the time of the divorce trial, while appellee's gross salary at that time was approximately forty thousand dollars per year. Appellant submitted to the trial court a list of her monthly obligations, showing that a minimum income of approximately eighteen hundred dollars a month would be needed to meet expenses. Evidence before the court showed that the highest gross monthly earning

---

[5] Further, we adhere to the position of those courts which defer to a legislative resolution of the controversy surrounding the contribution of one spouse to the professional degree of the other. See, *e.g., Lovett* v. *Lovett* (Ky. 1985), 688 S.W. 2d 329.

Indeed, we note that legislation on this issue has recently been introduced in the Ohio House of Representatives, 116th General Assembly, regular session. The Preamble to proposed H.B. No. 678 reads as follows:

"A BILL

"To amend sections 3105.18 and 3105.63 and to enact section 3105.19 of the Revised Code to require restitution of contributions of a spouse to the education or training of the other spouse, upon a divorce or dissolution of marriage, subject to specified limitations."

The enactment of laws relating to divorce, alimony and division of property has historically been the exclusive province of the legislature in this state. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 414 [75 O.O.2d 474]; *Miller* v. *Miller* (1951), 154 Ohio St. 530 [43 O.O. 496]; *Snouffer* v. *Snouffer* (1937), 132 Ohio St. 617, 623 [9 O.O.14]; *DeWitt* v. *DeWitt* (1902), 67 Ohio St. 340, 347.

In this instance, we believe any changes in Ohio's domestic relations laws regarding treatment of a professional degree upon divorce should emanate from the General Assembly rather than the judiciary.

appellant had recently achieved was approximately one thousand dollars.[6] The court was also aware that appellant had agreed to attend secretarial school rather than college so that she could support appellee while he obtained his professional degree and that appellant now wished to pursue a higher education. While we are not suggesting that the trial court should have drained appellee's income by asking him to meet all of his former wife's expenses, this award was manifestly inadequate to assist appellant in meeting her monthly obligations and her educational goals.[7]

Additionally, the trial court attached several conditions subsequent to its award and ordered that the occurrence of these conditions would automatically terminate appellant's alimony.[8] One of the conditions stated that appellant's award would cease if she were found to be living "in a state of concubinage." Whether this term was used in the sense of punishment for immoral behavior or otherwise, this court held in *Wolfe* v. *Wolfe*, *supra*, at paragraph three of the syllabus, that "[p]ost divorce unchastity upon the part of the former wife is not grounds for automatically terminating the alimony award but may be considered in a subsequent

---

[6] The trial court stated in its findings of fact that appellant's most recent net monthly earnings were seven hundred eighty dollars per month, but that appellant had lost that job due to a layoff. Further, the court stated, appellee's net monthly income at the time of divorce was $2,262.

[7] Recently, after a very thorough examination of the adequacy of alimony awards, Dr. Lenore J. Weitzman stressed the need to provide alimony sufficient to enable a newly divorced woman to obtain job training or further education:

"Providing the alimony that will enable a divorced woman the time and money to invest in her future career, instead of requiring her to find immediate employment, should pay off in real dollars not only for the divorced woman and her children, but eventually for her former husband as well, as it will ultimately lighten his burden of financial support for the children. The success of centers for training 'displaced homemakers' provides an affirmation of this prediction.

"In fact, research from Ohio State University shows that women who enrolled in a training program, rather than taking a job in the first year after divorce, were more successful in terms of both job level and annual earnings in the long run. Professor Frank Mott followed a group of married women over five years from 1968 to 1973. A subsample of this group got divorced during the study period, and Professor Mott compared the postdivorce experiences of women who began working immediately after the divorce with those who obtained job counseling, enrolled in a training program, and delayed entry into the labor force for a year or more. He found that both young and mature women who enrolled in a training program were more successful than their counterparts who received no training in 'finding a job after the transition and in obtaining higher annual earnings during that year.' " Weitzman, The Divorce Revolution (1985) 208.

[8] The trial court in the instant case did not expressly reserve jurisdiction to modify its alimony award. Thus, appellant could not request modification of the alimony or removal of the conditions subsequent attached to her award. As was held in *Ressler* v. *Ressler* (1985), 17 Ohio St. 3d 17, syllabus, "[a] decreeing court does not have continuing jurisdiction to modify a sustenance alimony award that was made for a fixed period of years even though the award is subject to termination in the event of death, remarriage or cohabitation unless the decreeing court expressly reserves jurisdiction to modify."

modification proceeding insofar as it is relevant to the issues of continued need for such alimony and the amount." Because this award was made subject to automatic termination in the event that appellant lived "in a state of concubinage" and because the trial court did not retain any jurisdiction to modify the award had this occurred, it was error to limit the award in this manner. We also find it ironic that at the time this condition was imposed on appellant, appellee was cohabiting with another woman, whom he later married.

The trial court also provided that appellant's alimony was to terminate in the event she became gainfully employed. We do not believe that appellant's alimony should have been cut off altogether the moment she found a job. Appellant stated that she did work during 1983, only to be laid off in November of that year. Further, the trial court determined that, in any event, appellant's alimony was to terminate after three years. Such a limitation was an abuse of discretion, given appellant's needs and appellee's ability to provide therefor.

In summary, it is apparent that prior to this divorce, the parties had attained a comfortable standard of living made possible in part by appellant's contribution to appellee's professional degree. After the divorce, appellant finds herself struggling to make ends meet, while appellee retains the financial security of his veterinary career. It was unreasonable for the trial court not to consider "[t]he standard of living of the parties established during the marriage" pursuant to R.C. 3105.18(B)(7) in arriving at an appropriate alimony award. The trial court also abused its discretion in failing to consider the future value of appellee's degree as an element of its alimony award pursuant to R.C. 3105.18.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for redetermination in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, LOCHER, HOLMES, C. BROWN and WRIGHT, JJ., concur.

DOUGLAS, J., dissents.

WRIGHT, J., concurring. Today the majority requires trial courts to consider, in an award of alimony, spousal contributions to the household finances which have enabled the other spouse to obtain a professional degree.

Ordinarily, the term "alimony" refers to provisions for spousal support and maintenance, see Black's Law Dictionary (5 Ed. 1979) 67, rather than to a division of property. Ohio statutory law provides only for an award of "alimony" in divorce proceedings. R.C. 3105.18. Although R.C.

3105.18 only refers to "alimony," the statute lists several factors for consideration by the court which are more appropriate to property division than to support and maintenance. See, *e.g.,* R.C. 3105.18(B)(3) (retirement benefits), (B)(4) (expectancies and inheritances), (B)(9) (assets and liabilities), (B)(10) (property brought to the marriage). See, also, *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 414 [75 O.O.2d 474]. Under this statute, Ohio courts have awarded support payments and divided up marital property. See *Wolfe, supra.*

The lack of clarity in our current hybrid statute makes it most difficult to interpret legislative intent under the circumstances of the case at bar. I have great empathy for a spouse who has contributed virtually all the financial support to the marriage while his or her partner completes professional school, only to be confronted with a divorce rather than financial stability and an enhanced lifestyle. I wholeheartedly agree that a spouse in such circumstances should be compensated for his or her contributions to the acquisition of the professional degree. Several strong arguments support the treatment of a professional degree or the potential future earning capacity as an asset that is subject to distribution along with other marital property. See *In re Marriage of Horstmann* (Iowa 1978), 263 N.W. 2d 885; *Inman* v. *Inman* (Ky. 1979), 578 S.W. 2d 266; *Woodworth* v. *Woodworth* (1983), 126 Mich. App. 258, 337 N.W. 2d 332; *O'Brien* v. *O'Brien* (1985), 66 N.Y. 2d 576, 498 N.Y. Supp. 2d 743, 489 N.E. 2d 712; *Hubbard* v. *Hubbard* (Okla. 1979), 603 P. 2d 747; *In re Marriage of Washburn* (1984), 601 Wash. 2d 168, 677 P. 2d 152. I believe, however, that the decision to define such a professional degree as marital property should be made by the legislature, not by this court.

For that reason, I reluctantly concur.

DOUGLAS, J., dissenting. Because I favor the granting of a special remedy providing appellant in this case, and others similarly situated, with a cash award based upon a determination of her past contributions rather than an award based upon a determination of her "vested interest" in the appellee's future earnings, I respectfully dissent.

Like the majority, I must reject the proposition that appellee's educational degree, received while the appellant worked and contributed financially to the cost of obtaining the degree, is "property," subject to equitable distribution upon dissolution of the marriage. Similarly, I reject appellant's contention that she is entitled to an award based upon a highly speculative determination of the present value of the assumed future earnings of her veterinarian spouse. However, I do believe that a wife[9] who has put her husband through school is at least entitled to be repaid or allowed

---

[9] For the sake of convenience, and because it has been the situation in all reported cases to date, the contributing spouse will be referred to as the wife. Certainly, justice would require the same result if the roles of the parties were reversed.

to recover her "investment" to prevent what otherwise would amount to unjust enrichment on the part of the degreed spouse.

The majority, in recognition of the need to fairly compensate appellant for her financial support of the appellee during his years in school, has fashioned a remedy which incorporates a consideration of appellee's projected enhanced future earnings as an element in reaching an appropriate award of alimony pursuant to R.C. 3105.18. There are, however, problems with this approach, which cause me to question (1) whether the lower courts will really be able to do justice to the parties under such a scheme and (2) whether alimony is the most effective way to provide compensation in a case such as this, where the marriage is dissolved before the wife has realized any real or substantial benefits from her husband's advanced degree.

In the first instance, if, as the majority has held, reducing the future value of a degree to its present value is too speculative a process upon which to base a property award, requiring courts to consider the future value of a veterinary degree "in reaching an equitable award of alimony * * *" is likewise unfair. The latter process requires the trial court to make the same "predictions" regarding the "future earnings of a 'typical' professional in a given field" and to rely upon the same assumptions of continued employment in a certain career path, as the former process. Stated differently, an increased, non-modifiable alimony award, granted to the wife based upon an assumption of enhanced future earnings by her spouse is as potentially unfair as is "[a] division of property based upon the estimated [future] value of a professional degree."

A better approach is one which provides for the recoupment of the actual expenditures of the wife with interest on this amount at the legal rate. R.C. 1343.03(A). The determination of such expenditures would involve minimal speculation, if any, and this "restitution" approach is what many courts have found to be most equitable in these cases.[10]

As to the propriety of providing compensation to the wife by an award of alimony, I have two concerns. First, alimony is primarily a mechanism by which support is provided. See, e.g., Fickel v. Granger (1910), 83 Ohio St. 101, paragraph one of the syllabus. Therefore, even in light of a degreed spouse's enhanced earning potential, a court might award alimony to cover the wife's living expenses (maintenance) but not her educational or other rehabilitative expenses since such expenses may not be included in the court's definition of support. As such, alimony would not provide an equitable return to the wife who paid for her husband's tuition, books and other educational expenses, in addition to his living expenses.

---

[10] See Hubbard v. Hubbard (Okla. 1979), 603 P. 2d 747; DeLa Rosa v. DeLa Rosa (Minn. 1981), 309 N.W. 2d 755; Inman v. Inman (Ky. 1982), 648 S.W. 2d 847; Mahoney v. Mahoney (1982), 182 N.J. Super. 598, 442 A. 2d 1062; In re Marriage of Lundberg (1982), 107 Wis. 2d 1, 318 N.W. 2d 918; In re Marriage of Sullivan (1984), 37 Cal. 3d 762, 209 Cal. Rptr. 354, 691 P. 2d 1020.

Second, alimony is dependent upon such factors as the recipient's income, subsequent marital status and, in some cases, the recipient's life style or moral behavior.[11] Thus, as noted by the court in *Hubbard* v. *Hubbard* (Okla. 1979), 603 P. 2d 747, 751-752:

"Equity would not be served by holding * * * that * * * [the wife's] recovery be limited to alimony for support and maintenance. To do so would force her to forego remarriage and perhaps even be celibate for many years simply to realize a return on her investments and sacrifices * * * ."[12]

Rather than provide compensation by way of increased alimony, what is needed, in cases such as the one at bar, is a special remedy, which is responsive to the contributing spouse's equitable claim to repayment for the "investment" made in the degreed spouse's education. This award, providing equitable redemption of the "investment" of the contributing spouse, should not be subject to the subsequent income or marital status of the recipient. Additionally, restitution should certainly bear no relationship to archaic requirements of chastity, particularly since such requirements have never been applied to men. For example, in the case *sub judice,* while the court required Mrs. Stevens to remain celibate, as a condition for continued receipt of alimony, Mr. Stevens was, at that moment, living with another woman. This double standard has more than a modicum of unfairness.

An award based upon a theory of reimbursement would involve the use of a formula including these factors: the calculation of the wife's total financial contribution to the couple's support and to the school expenses of the husband; reduced by the amount thereof which represents the cost of the wife's individual support; and further reduced by whatever financial contribution the husband made to the couple's support and to his school expenses. The balance would then be recompensable and reimbursable to the wife as her contribution.[13]

---

[11] Although this court, in *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], paragraph three of the syllabus, has rejected the latter factor except as it relates to the need for support, the other factors still serve to determine whether alimony is to be awarded or continue, and affects the amount of the award.

[12] I note, however, that an award of such compensation in the form of alimony would provide the recipient with one important advantage. Pursuant to Section 523(a)(5), Title 11, U.S. Code, a debt owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, * * *" is not dischargeable in bankruptcy. See, also, *Lemert* v. *Lemert* (1905), 72 Ohio St. 364. Thus, possibly, the amount awarded as restitution for the contributing spouse's "investment" in the education and degree of her former spouse might be given the nomenclature of "equitable redemption alimony."

[13] The amount of compensation to which the wife is entitled should be further reduced in cases where the marriage has lasted for some time after the degree was received and where

A lump sum cash repayment of the wife's contribution would be of greatest advantage as it could serve to provide the wife with needed additional funds for rehabilitation or readjustment purposes and it would avoid ongoing strife between the parties. However, in those instances where repayment in this form is not possible, redistribution of other marital assets may be ordered to achieve a similar immediate settlement of this obligation. In cases, such as this, where there is little cash or property available upon divorce, restitution should be ordered by way of such fixed periodic payments, as determined by the court to be reasonable and fair under the circumstances. In addition, it would be appropriate that the total amount determined to be due be collateralized, by insurance or otherwise, to assure payment in the event of the death of the obligor.

Finally, it is important to note that an award of reimbursement and an award of alimony are not mutually exclusive. Rather, the amount awarded to the contributing spouse becomes one of the factors to be weighed pursuant to R.C. 3105.18(B)(4) and (B)(9) in determining the appropriateness of an award of alimony.

In conclusion, I am grateful that I am not the trial judge to whom this case is remanded as, in my judgment, it is not at all clear what the majority opinion would have me do, in dollars and cents, to equitably compensate Mrs. Stevens for her sacrifices.

---

the wife has shared substantially in the professional earnings of the husband. See West's Annot. Cal. Civ. Code Section 4800.3 which states in part:

"(c) The reimbursement and assignment required by this section * * * [to be made to the community property of the parties by the degreed spouse] shall be reduced or modified to the extent circumstances render such a disposition unjust, including but not limited to any of the following:

"(1) The community has [i.e., both parties to the marriage have] substantially benefited from the education, training, or loan incurred for the education or training of the * * * [degreed spouse]. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding."

The "rebuttable presumption" approach to the determination of whether the contributing spouse has "substantially benefited" from the professional earnings of the degreed spouse strikes an appropriate balance by which courts in this state may be guided. Applying this "rebuttable presumption" approach to the present case, the wife would be presumed to be entitled to full recovery of her contributions unless the husband can prove "such a disposition unjust."