This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Jeanne Marie Davis (hereinafter "Jeanne"), appeals the trial's court decision granting a divorce for Jeanne and Defendant-Appellee, Danny Davis (hereinafter "Danny"). For the following reasons, we conclude the trial court did not abuse its discretion when awarding spousal support and properly found Danny owned traceable, separate property, and affirm the trial court's decision.
The parties were married on December 28, 1980, and two children were born during the marriage, Jennifer Lynn (hereinafter "Jennifer"), d.o.b. 3-8-82, and Sarah Louise (hereinafter "Sarah"), d.o.b. 12-14-83. On May 11, 1999, Jeanne filed for divorce in the Columbiana Court of Common Pleas. Danny was served and, on June 15, 1999, filed his answer and counterclaim which Jeanne replied to on June 16, 1999. The matter proceeded to trial on February 15, 2000. The trial court found the parties were incompatible and granted a divorce on March 29, 2000.
The year before the divorce Jeanne earned $11,126.94. She also had a pension worth $2,632.35 and Mary Kay inventory worth $500.00. Jeanne is currently 44 years old, in good health, has a high school education and 9-10 months of nursing school while primarily being a homemaker for the duration of the marriage.
Danny earns approximately $100,000 a year as a foreman in a tool and die plant. He currently is 49 years old, in good health, and has a high school education.
The trial court found Danny's pension to be a marital asset and awarded one-half the value of the pension to each party. The court then determined the value of the real estate to be $94,975.00 and found sufficient evidence to trace $12,500 of this property to Danny as his separate property. After deducting the value of Danny's separate property and the mortgage, the trial court valued the marital equity in the real estate to be $61,475. The court then granted Danny the right to purchase the marital residence within sixty days by paying Jeanne half the value of the marital equity.
In her brief, Jeanne asserts the following three assignments of error:
 "The trial court erred by failing to designate the Appellant as residential parent of the minor child, Sarah Louise Davis, D.O.B. 12/14/83, and by failing to make other appropriate orders concerning the child."
 "The trial court erred by making award of spousal support to Appellant which is manifestly inadequate, inequitable, unreasonable and unconscionable."
 "The trial court erred by failing to make written findings of fact to support a determination that the marital property has been equitably divided as required by R.C. 3105.171, and committed further error by awarding $12,500.00 to Appellee as his traceable separate property without making written findings of fact to support a determination of the traceable value of Appellee's separate property and where such property was transmuted into marital assets."
At oral argument counsel for Jeanne moved to withdraw her first assignment of error, which counsel for Danny did not oppose. We granted that motion and will only address her second and third assignments of error.
In general, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court applies the abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028, 1030. The term "abuse of discretion" connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.
 "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
 "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.
An appellate court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131, 541 N.E.2d 597, 599. Further, this court should not independently review the weight of the evidence but should be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.
In her second assignment of error Jeanne asserts the trial court abused its discretion in its award of spousal support. She argues after spousal support is awarded she will have approximately $18,200 to live on while Danny has approximately $92,800 to live on and this manifestly inadequate difference is an abuse of discretion. Danny responds by stating the trial court considered the statutory factors in awarding spousal support and, therefore, the trial court did not abuse its discretion.
When determining whether spousal support is appropriate and reasonable, and, if so, the nature, amount, duration and terms of payment of spousal support, a court must consider the factors listed in R.C.3105.18(C). When a trial court does not consider all of these factors, or considers one to the exclusion of the others, it abuses its discretion.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197. The trial court is not required to make individual findings of fact as to each factor as long as there is some evidence in the record going to each one. Bowen v. Bowen (1999), 132 Ohio App.3d 616, 628, 725 N.E.2d 1165,1173. However, a trial court may also abuse its discretion if it makes a manifestly inadequate award of spousal support. See Stevens v. Stevens
(1986), 23 Ohio St.3d 115, 23 OBR 273, 492 N.E.2d 131.
In Stevens the court of appeals found the husband made approximately $40,000 per year while the wife, unemployed at the time of the divorce, could make approximately $1,000 per month, or $12,000 per year. In making its alimony decision, the trial court awarded the sum of $400 a month sustenance alimony, the marital home and one of the two family cars to the wife. The wife was also ordered to assume the mortgage on the house and the lien on the car. The wife had submitted evidence to the court that her monthly obligations were $1,800 per month. The court found the award of $400 an abuse of discretion.
 "While we are not suggesting that the trial court should have drained appellee's income by asking him to meet all of his former wife's expenses, this award was manifestly inadequate to assist appellant in meeting her monthly obligations and her educational goals." Id. at 121, 23 OBR at 278-279, 492 N.E.2d at 136.
Jeanne attempts to argue the reason the Stevens court found manifest inadequacy was because of the income disparity between the parties, which was approximately $18,400 after the divorce. She argues the greater disparity in this case, approximately $74,600, taken into consideration with her nearly twenty years as homemaker amount to a clear abuse of discretion. However, the fact that a disparity existed is not why theStevens court found the award manifestly inadequate. "There is no presumption, rebuttable or irrebuttable, that marital property be divided equally upon divorce; rather a potentially equal division should be the starting point of the trial court's analysis before it considers the factors listed in R.C. 3105.18 and all other relevant factors." Cherryv. Cherry (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293, paragraph one of the syllabus.
Instead, the Stevens court had uncontradicted evidence before it that proved the wife would need a greater award of spousal support than the trial court made. In the present case Jeanne simply did not present this type of evidence. She testified as to how much she was making, that she stopped being a nursing assistant when she got married at Danny's insistence, and she planned on going back to nursing school and estimated it would take her four years to complete her training. However, she fails to show what her expenses actually are. If, for instance, her expenses are $1,000 a month, then her income with alimony would exceed this by approximately $600 a month. There is simply no way of making the same kind of judgment the Stevens court made.
However, even though Stevens may not apply, the trial court still may have abused its discretion when making the award.
 "In Ohio, alimony is comprised of two components: a division of marital assets and liabilities, and periodic payments for sustenance and support. After the division of property is made, the trial court may consider (1) whether an additional amount is needed for sustenance and (2) the duration of such necessity." (Citations omitted) Kaechele, supra at 95, 518 N.E.2d at 1200.
Here, the trial court awarded Jeanne half the value of marital real estate, $30,737.50, half the value of Danny's pension, $63,913.89, all of her own pension, and other various property items while encumbering her with approximately half the credit card and bank loan debt. Only after making this property split does the trial court consider spousal support. In awarding spousal support for five years the trial court also seems to have taken into consideration how long Jeanne stated she needed to get her nursing degree. When viewing the court's award of alimony as a whole, we cannot find the trial court abused its discretion. Jeanne's second assignment of error is meritless.
Jeanne's third assignment of error presents three issues for review: 1) whether the trial courts findings were sufficient to determine the property was equitably divided; 2) whether Danny's premarital property was transmuted into marital property; and, 3) whether the trial court's finding it could trace $12,500 in assets to Danny's separate property was against the manifest weight of the evidence.
When dividing marital property a court must "determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). When making this determination, the court must consider the factors found in R.C. 3105.171(F). Finally, pursuant to R.C. 3105.171(G), the trial court must "indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele at 97, 518 N.E.2d at 1201. If we cannot determine why the trial court decided as it did, then the decision should be reversed and the case remanded for further proceedings. SeeHeslep v. Heslep (June 14, 2000), Monroe App. No. 825, unreported.
When dealing with the couple's property the trial court's decision addresses the different kinds of property, assesses whether the property is marital or separate property, and then awards the property. When determining whether the $12,500 in question was marital or separate property, the trial court stated:
 "Sufficient evidence was presented by defendant in the form of tracing of premarital real estate owned by the husband; the Court finds that the value of this real estate, the first Twelve Thousand Five Hundred Dollars ($12,500.00) is separate property of the husband in accordance with the provisions of Revised Code 3105.171."
Jeanne asserts this entry is insufficient because it does not set forth the trial court's reasoning as to how it traced this amount from the outset of the marriage until its end.
When a trial court is making a division of property and does not indicate what property is separate property and what property is marital property, then the findings of fact are inadequate. Heslep at 3. "[W]ithout the classification of the [property] as either separate or marital property, we are left without a proper framework by which to review the trial court's decision." Clark v. Lintner-Clark (June 30, 2000), Carroll App. No. 720, unreported at 5.
However, Kaechele only requires a trial court indicate the basis for its decision, not that it explain its reasoning in detail. The underlying purpose of R.C. 3105.171(G) is to assure the parties the trial court has considered all necessary and relevant factors. Apicella v. Apicella
(Nov. 15, 1999), Belmont App. No. 97-BA-65, unreported. Therefore, if there is sufficient evidence in the record to demonstrate the trial court addressed all the factors provided for in R.C. 3105.171(F) and the court has provided a sufficient written explanation to support the determination that the court made an equitable division of property pursuant to R.C. 3105.171(C), then the trial court's findings will be sufficient to support its division of property. Id. at 5; see alsoZebrasky v. Zebrasky (June 24, 1999), Mahoning App. No. 97 CA 48, unreported.
In the present case, it is clear why the trial court found the property to be separate property. A review of the record elicits the following facts. In 1972 Danny married his now ex-wife and, during that time, they bought the Tenth Street property. Danny and his ex-wife were then divorced in 1974. Danny bought the Third Street property in approximately 1975 for $12,500. Danny married Jeanne in 1980. At that time, Danny owned both the Tenth and Third Street properties. He then sold the Third Street property in 1982 for $17,500 and most of the proceeds of the sale improved the Tenth Street property. In 1989 Danny's ex-wife quitclaim deeded her interest in the Tenth Street property to Jeanne. The couple then bought the property on Hartley Road and, after selling the Tenth Street property in 1993, used the proceeds to refinance the Hartley Road property which was owned at the time of the divorce. Under these facts the Third Street property was not marital property under either of Danny's marriages.
The trial court found it could trace the money originally spent to buy the Third Street property, prior to the marriage, to the Hartley Road property. The trial court's finding of fact does not spell this chain of events out. However, the trial court does say it is basing its decision on "evidence presented by defendant in the form of tracing of premarital real estate owned by the husband." This is a sufficient indication of what evidence the trial court relied upon when making its determination. Therefore, Jeanne's argument that the trial court did not make sufficient findings is meritless.
Jeanne next argues Danny's separate property interest was transmuted into a marital property interest through an inter vivos gift. Spouses can change separate property into marital property during the course of the marriage. Helton v. Helton (1996), 114 Ohio App.3d 683, 685,683 N.E.2d 1157, 1159. "The most commonly recognized method for effecting this change is through an inter vivos gift of the property from the donor spouse to the donee spouse." (Emphasis sic.) Id. The essential elements of an inter vivos gift are "(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and, (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it." Bolles v.Toledo Trust Co. (1936), 132 Ohio St. 21, 7 O.O. 60, 4 N.E.2d 917, paragraph one of the syllabus.
When the parties were married in 1980, Danny owned the Tenth Street property jointly with his ex-wife. On February 23, 1989, Danny's ex-wife deeded her interest to the Tenth Street property to Jeanne via a quitclaim deed. Jeanne argues this transfer was an inter vivos gift to her from Danny and Danny's interests in the Tenth Street property were transmuted into marital property as a result of that gift. However, although this may be an inter vivos gift from Danny's ex-wife to Jeanne, Danny did not transfer his interests because he did not give anything to Jeanne. He did ask his ex-wife to transfer the property to Jeanne "[b]ecause I wanted my wife to be able to inherit it if I died." However, it was not Danny who transferred his interests, but Danny's ex-wife who transferred hers. Therefore, because Danny did not give anything to Jeanne, he could not have made an inter vivos gift.
Finally, Jeanne argues the trial court's decision was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.
 "In determining whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony." Whiting v. Ohio Dept. of Mental Health (2001), 141 Ohio App.3d 198, 202, 750 N.E.2d 644, 646.
In the present case, the evidence clearly shows Danny paid $12,500 for the Third Street property, which was acquired before the marriage. That money can be traced to the Hartley Road property which is the subject of the divorce. The trial court's finding that this amount was Danny's separate property was supported by credible, competent evidence. For these reasons, Jeanne's third assignment of error is meritless.
Because we find the trial court's award of spousal support was not an abuse of discretion and it correctly found Danny had traceable, separate property, we affirm the decision of the trial court.
Vukovich, P.J., Concurs.
Waite, J., Concurs.