[Cite as *Williams v. Williams*, 2016-Ohio-7595.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| SUSAN WILLIAMS | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Crag R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RAYMOND F. WILLIAMS | : | Case No. 2016CA00066 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Domestic Relations Divison,
Case No. 2010DR01275



JUDGMENT:        Affirmed



DATE OF JUDGMENT:        October 31, 2016



APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

STANLEY R. RUBIN        LAURA L. MILLS
437 Market Avenue North        101 Central Plaza South
Canton, OH  44702        200 Chase Tower
        Canton, OH  44702

*Farmer, P.J.*

{¶1} Appellant, Raymond Williams, and appellee, Susan Williams, were granted a divorce on May 21, 2013. Findings of facts and conclusions of law were filed on June 17, 2013. On two previous occasions, this court reviewed the lack of a spousal support award, and remanded the matter to the trial court to evaluate an award of spousal support. *Williams v. Williams,* Stark No. 2013CA00107, 2014-Ohio-1044; *Williams v. Williams,* Stark No. 2014CA00160, 2015-Ohio-2639.

{¶2} By judgment entry filed March 29, 2016, the trial court issued a final addendum to the divorce decree, ordering appellant to pay appellee spousal support in the amount of $6,000 per month, subject to the continuing jurisdiction of the trial court. The award was to continue until either parties' death, appellee's remarriage or cohabitation, or twelve years, whichever occurred first. The trial court started the spousal support award effective the first day of the first month after the filing of the original divorce decree filed on May 21, 2013.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶4} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED SPOUSAL SUPPORT TO PLAINTIFF-APPELLEE SUSAN WILLIAMS ("SUSAN" OR "APPELLEE") IN THE AMOUNT OF $6,000 PER MONTH, RETROACTIVE TO JUNE 2013, FOR A DURATION OF 12 YEARS, OR UNTIL EITHER PARTY'S DEATH, SUSAN'S REMARRIAGE OR COHABITATION, WHICHEVER FIRST OCCURS."

I

{¶5}    Appellant claims the trial court abused its discretion in awarding $6,000 per month as spousal support for twelve years, failed to consider a set-off for a previous one time lump sum support payment awarded to appellee on December 19, 2011 and included in the May 21, 2013 divorce decree, and failed to consider the factors in R.C. 3105.18(C).  We disagree.

{¶6}    We note the course of this divorce has run through two trial court judges, two previous appeals, and nearly six years, and on the issue of a spousal support award, our focus is on the state of the record when the original divorce decree was issued on May 21, 2013.  The evidence clock is still set at 2013, and this court has made some specific findings that are set in stone.

{¶7}    A trial court has broad discretion in determining a spousal support award. *Neville v. Neville,* 99 Ohio St.3d 275, 2003-Ohio-3624; *Stevens v. Stevens,* 23 Ohio St.3d 115 (1986).  In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶8}    R.C. 3105.18 governs spousal support.  Subsection (C) states the following:

> (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment,

provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶9}   In *Williams v. Williams,* Stark No. 2014CA00160, 2015-Ohio-2639, ¶30-37, this court found sufficient factors under R.C. 3105.18(C)(1) to substantiate a spousal support award:

Regarding factors (a), (b), (k), (h) and (m), the record reveals Wife graduated from high school in 1981, and earned an associate's degree in interior design from the Art Institute of Pittsburgh.  Wife subsequently earned on-line bachelor's and master's degrees.  Wife quit working after the parties married and started their family.  Due to Husband's long work hours, Wife was primarily responsible for raising the parties' children.

Although Wife sent out about 30 resumes in 2012, she had a difficult time finding employment due to her lack of skills and knowledge of computer software.  Wife eventually found part-time employment as a bookkeeper, earning $10/hour, working approximately 15 hours/week.

Wife also tutors at Stark State, earning $13/hour, working approximately 20 hours/week. Wife plans to go back to school as her on-line degrees have not been useful in helping her secure employment.

On the other hand, Husband has a bachelor's degree in business, and earns $186,000/year. During the marriage, Husband earned even more. Husband's businesses were worth millions of dollars.

Regarding factor (c), the evidence revealed Wife was 50 years old and in good health, while Husband was 65 and also in good health. The evidence also showed the parties were married for 22 years, factor (e), and the children were emancipated and not living at home, factor (f).

With respect to the retirement benefits of the parties, factor (d), the testimony established Wife cashed in her IRA during the divorce proceedings in order to pay expenses. Husband had two IRA/Retirement Accounts which had no current cash value.

The record is replete with evidence relative to factor (g), the standard of living established during the marriage. The parties enjoyed a lavish lifestyle. Their home, which was 10,000 square feet, sat on 10 acres of land and had an indoor swimming pool and an indoor basketball court as well as a separate guest house. The home was valued at close to $500,000. The parties took numerous, international vacations each year. They also took periodic weekend trips to Las Vegas, traveling on one of the several corporate planes owned by Husband's businesses. Husband and Wife were members at Brookside Country Club. They

purchased new vehicles every two years. Wife drove a Lincoln MKX and Husband drove a Corvette. They purchased a boat for $52,000. Wife's wedding ring was worth $100,000. The parties donated approximately $100,000 to charity to each year.

Regarding factor (i), the parties had extensive assets as well as extensive liabilities. Wife had credit card debt totaling over $40,000, and student loan debt of $60,000.

With respect to factor (j), the testimony indicated Wife played a vital role in Husband's professional success. She entertained business clients, including hosting several parties each year. Wife also accompanied Husband on business trips with clients.

{¶10} We find the law of the case doctrine applies:

Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.***

The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results.***However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to

preserve the structure of superior and inferior courts as designed by the Ohio Constitution.

In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts.***Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.

*Nolan v. Nolan,* 11 Ohio St.3d 1, 3, (1984).  (Citations omitted.)

{¶11} Therefore, on remand, the duty of the trial court was limited to a determination of the amount and duration of spousal support.  The unchallenged findings in the June 17, 2013 findings of fact at ¶ 20 lists appellant's income as $186,000, and he has a spousal support obligation of $2,000 per month to a former spouse.  Also unchallenged at ¶ 18 was the finding of appellee's income in 2011 as $85,000, but there was no evidence of her income for 2012.  The duration of the marriage was twenty-two years.

{¶12} Despite the tortured history of this divorce case, the questions to be resolved sub judice is whether a $6,000 per month award was an abuse of discretion and whether the one time lump sum support payment awarded to appellee on December 19, 2011 should have been set-off or considered.

{¶13} We will address the one time lump sum support payment first. The genesis of this award to appellee was the result of appellant's November 21, 2011 emergency motion to have an overpayment on his 2010 taxes applied to his 2011 estimated tax. Because appellant was under a child support order and owed funds to the Stark County Child Support Enforcement Agency, the IRS had applied part of appellant's federal tax refund ($313,473) to the debt. *See,* Exhibit A, attached to appellant's November 21, 2011 Emergency Motion.

{¶14} As a result, the trial court ordered the following in a judgment entry filed December 19, 2011:

The Defendant was previously ordered to pay a temporary child support order of $4200 per month, effective March 14, 2011. The March 14, 2011 temporary child support order has been vacated and the Stark County CSEA records should reflect that no child support obligation exists for the Defendant.

The Defendant's temporary spousal support order is modified as follows:

a. The $50,000 per month temporary spousal support order, effective March 15, 2011 is vacated in its entirety and the Defendant is ordered to pay the Plaintiff the sum of $4750 per month through the Stark County CSEA plus processing fees EFFECTIVE January 1st 2011.

b. Effective January 1st, 2012 the Defendant is ordered to pay the Plaintiff the sum of $3800 per month through the Stark County CSEA plus processing fees until further order of the Court.

c. In addition to this award, the Court orders the Defendant to pay to the Plaintiff, through the Stark County CSEA, a one time non-taxable lump sum support award of $140,000.00 (plus processing fees to the CSEA). (NOTE: This is NOT a property settlement award but a one time non-taxable support award).

All monies previously paid into the Stark County CSEA by the Defendant shall be applied to his modified spousal support award of $4750 per month effective January 1, 2011 and $3800 per month effective January 1, 2012. If any arrearages exist after the records are corrected, they shall be paid out of the IRS intercept monies.

{¶15} In its June 17, 2013 findings of fact at ¶ 82 and 83, the trial court acknowledged this order as follows: "In December 2011, an entry provided that the Plaintiff was to receive $140,000 from UST and Defendant's tax credits being held by the IRS" and "This $140,000 was identified as a one-time non-taxable support award." At Conclusion of Law No. 35, the trial court ordered: "The Court finds the $140,000 award to the Plaintiff was in the nature of support and makes no set off of the $140,000 or any monies paid to the Plaintiff before any temporary orders were in place."

{¶16} Neither party appealed the findings or conclusions; therefore, the law of the case doctrine resolves this issue as moot.

{¶17} The trial court's independent findings in its judgment entry filed March 29, 2016, given that this court had ruled on the existence of factors under R.C. 3105.18, were as follows in pertinent part:

2. Defendant has a bachelor's degree in business and has a salary of $186,000. While Defendant earned considerably more in prior years, the business declined greatly. Defendant has the potential to earn more, given there are several businesses still active. He also has access to "loans" through one business, Aircraft Maintenance Support. These business (sic) were worth millions in previous years and with proper management could potentially again be very profitable. Defendant worked long hours and traveled during the marriage. Defendant, at the time of trial was 65 years old and in good health.

3. Plaintiff worked in interior design prior to the marriage and had an associate's degree from the Art Institute of Pittsburgh. However, during the marriage, she quit work to raise the parties' two children and assist in the care of Defendant's three children from a prior relationship. (Tr. Vol. 5, pg. 161-162) Plaintiff did earn on-line bachelor and master's degrees, but after being out of the work force for over twenty years, and having limited computer experience, had difficulty finding employment. She works two part time positions, as a bookkeeper and a tutor. Combined income for the two positions is approximately $21,320, given the hours currently worked. Plaintiff testified she needs more education to learn QuickBooks

and other computer programs. (Tr. Vol 5, pg. 196) Plaintiff, at the time of trial was 50 years old and in good health.

7. The parties had extensive assets, but by the time of the trial, they also had extensive debts. The businesses were under a forbearance agreement with First Merit Bank and several assets had no value. Plaintiff had $40,000 in credit card debt and $60,000 in student loans. Plaintiff testified that she was accustomed to spending $18,000 per month, using "payroll checks" made out to her and putting $5,000 to $7,000 on credit cards. (Tr. Vol. 5, pg. 174)

{¶18} The trial court then ordered the following in pertinent part:

1. The Court considered all of the spousal support factors and finds that spousal support is appropriate and reasonable. §3105.18(C)(1).

Effective the first day of the first month after filing the original Judgment Entry of Final Decree in May 2013, and subject to the continuing jurisdiction of this Court, the Defendant shall pay to the Plaintiff spousal support in the sum of $6,000 per month. This spousal support shall termination upon either parties' death, the wife's remarriage or cohabitation, or 12 years, whichever first occurs.

This Court may modify the amount or terms of this spousal support order upon the change of circumstances of a party, which includes, but is not limited to, any increase or involuntary decrease in the parties' wages,

salary, bonuses, living expenses or medical expenses. O.R.C. §3105.18(e)(1), (F).

{¶19} Given the trial court's finding of appellee's income of $21,320 as demonstrated in the record, we find the trial court balanced the income of the parties. Giving appellee an income of $21,320 plus $6,000 per month equals one-half of appellant's income. With the retention of jurisdiction on this issue by the trial court, any changes since 2013 can be addressed to the trial court.

{¶20} Because a spousal support award was not given in 2013 which this court found to be error, we find the retroactivity of the award to be justified and not an abuse of discretion.

{¶21} Upon review, we find the trial court did not abuse its discretion in fashioning the spousal support award in this case.

{¶22} The sole assignment of error is denied.

{¶23} The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby affirmed.

By Farmer, P.J.

Delaney, J. and

Baldwin, J. concur.

SGF/sg 927